ANNIE E. BRIGHT and others, appellants,

v.

JOHN H. PLATT, assignee &c., respondent.

Under the charter of the New Egypt and Farmingdale Railroad Company (*P. L. 1869 p. 472*), a portion of certain mortgaged lands were condemned for the company's use, in proceedings of which the company had given notice to the mortgagors only.—*Held,* that the mortgagee was entitled in equity to have the sum so awarded for the land and damages, applied towards the payment of his debt, and the rest of the mortgaged premises, subject to the rights of the railroad company, sold for the payment of the balance.

On appeal from a decree of the chancellor, reported in *Platt* v. *Bright, 4 Stew. 81.*

Bright *v.* Platt.

*Mr. Wm. H. Vredenburgh*, for appellants.

Two positions are taken by the appellants, viz.:

(1) That the respondent has no equity or right to the $6,610 on deposit with the clerk in chancery.

(2) That if he had, it would be only *after* and *subject* to the exhaustion of the whole mortgaged premises.

I. It is plain that at the date of that order, viz., June 9th, 1875, this $6,610 in question, was due to the appellant. The order so recites. Now, *when* and *how* and *by what magical process* has this absolute right been taken from Mrs. Bright and transferred to Mr. Platt? It is important to note that the complainant's suit is nothing more than a proceeding *in rem*. No decree for any deficiency against the mortgagors can be asked, because no *notice* was served on them that such was the object of the suit. *Wilson* v. *King, 8 C. E. Gr. 150; Rules in Chancery 38.*

If the effect of the condemnation proceedings, although taken without any act or consent of the mortgagor, and without notice to the mortgagee, had been to *deprive* him of any rights in the mortgaged premises, then this position might be tenable. Such was the result in the case of the *Bank of Auburn* v. *Roberts, 44 N. Y. 192, 45 Barb. 407.* If, on the other hand, such third party, without the mortgagee's consent, does a permanent damage to the mortgaged premises, so as to impair the security of the mortgagee, the mortgagee can look to such third person for compensation in damages for such injury. *Jackson* v. *Turrell, 10 Vr. 329,* and cases there cited; *Van Pelt* v. *McGraw, 4 N. Y. 110.*

Again, the *effect* of the present decree is to declare, in a collateral proceeding, without allegation of fraud or mistake, that the award to Mrs. Bright, the party to that proceeding, was intended as an award to Platt, who was *not* a party to it. The maxim of the law is, "*res judicata pro veritate accipitur.*" In legal theory, the conclusive presumption is, that the record of the judgment speaks for itself, and speaks the

truth. *Broom's Legal Maxims 2, 3, 328, 333, 945; Duchess of Kingston's Case, 2 Smith's Lead. Cas. 636.*

This award, between these parties, has the force of a judgment of a competent court, and even "the legislature has no power" to "open" it, or "unsettle rights previously ascertained." *Hooker* v. *Hooker, 10 Sm. & Marsh. 599.*

By the act of 1877, the legislature could not and did not open that award of 1873, or unsettle rights previously ascertained by it. This act was intended to empower the court of chancery merely to *distribute* the money among the *parties* entitled to it, and who were cut off by the award, not to persons who were not bound by the award. Again, the act of 1877 was intended to operate only *in futuro*, and has no control over the award of 1873.

In *Thompson* v. *Alexander, 11 Ill. 55*, the court says : "A retrospective effect will not be given to an act, unless it *clearly appears* that such was the intention of the legislature, and such intention must be manifested by clear and *unequivocal* expressions. If it is left doubtful what was the real design, the statute must be so construed as to have a prospective effect only." See, also, *Belvidere* v. *Warren R. R. Co., 5 Vr. 200; Deegan* v. *Morrow, 2 Vr. 138; Prince* v. *United States, 2 Gall. 204; Whitman* v. *Hopgood, 10 Mass. 437; Bruce* v. *Schuyler, 4 Gilm. 221; Somerset* v. *Dighton, 12 Mass. 383, 385; Hooker* v. *Hooker, supra; Vreeland* v. *Bramhall, 10 Vr. 2.*

Again, the effect of this decree, appealed from, is practically to reverse the decisions of our courts. The mortgagee becomes an *unnecessary* party to such condemnation proceedings. *Ross* v. *E. & S. R. R. Co., 1 Gr. Ch. 422; National Railway* v. *Easton & Amboy R. R., 7 Vr. 181.*

II. If the mortgagee could have an equity to this $6,610, which we utterly deny, it must be conceded that it would be only *after* the mortgaged premises and all of them are exhausted. Until then it will not appear whether the mortgagee's interest has been *touched* by the condemnation proceedings. The action of the railroad company may not

Bright *v.* Platt.

affect or concern the mortgagee. If the mortgaged premises, as they stand at the day of sale, reach the mortgage encumbrances, this $6,610 cannot go to the mortgagee. Such was the equity established in the case above cited of *Auburn* v. *Roberts*, and other cases.

*Mr. Francis Fellowes*, for appellants.

The essential part of these proceedings, so far as regards the present case, is, that the N. E. & F. R. R. Co. laid out and located the route of their railroad through and across two contiguous lots of Annie E. Bright, the mortgagor (one of which is embraced in the mortgage), and, being unable to agree as to the price &c., commissioners were appointed, February 3d, 1873, to make appraisal &c., and that, on the 17th of March, 1873, they reported that Charles Butcher, Charles G. Bond and Samuel T. Williams, appearing on the part and behalf of said company, and John E. Lanning for Annie E. Bright and Aaron S. Bright, her husband, " we did thereupon, in the presence of the said parties and agents and representatives, proceed to view and examine the said lands, and to make a just and equitable estimate and appraisement of damages to be paid by the N. E. & F. R. R. Co. for such land and damages aforesaid; and, after having first viewed and examined the said premises, and heard the allegations of the parties, and duly considered the same, we do report that the sum of $1,905, for the value of the lands aforesaid, and the sum of $7,626, for the damages aforesaid, be paid by the said the N. E. & F. R. R. Co., to the said Anna Bright and Aaron S. Bright, her husband, making together the sum of $9,531 for the said lands and damages aforesaid. In testimony whereof &c."

It is conceded that the mortgagee had no notice of these proceedings, and was not a party to them. It must, therefore, be also conceded, that the award vested, at least, the legal title to the moneys in the mortgagor.

No notice having been given to the mortgagee, the commissioners had no jurisdiction to make any award to him,

or to anybody in his behalf, for his interest in the land. The charter required notice, and the fundamental law required notice. *State* v. *Trenton, 7 Vr. 504; State* v. *Newark, 1 Dutch. 411; S. C., 4 Zab. 666.* As to persons without notice, the proceedings were *nugatory,* although valid as to persons having notice. *Nat. R. R. Co.* v. *Easton & Amboy R. R. Co., 7 Vr. 181; Ross* v. *Elizabethtown & Somerville R. R. Co., 1 Gr. Ch. 422.*

Nothing is left to Mrs. Bright for injury to her adjacent lands, for exposure to conflagration, destruction of her growing crops or her fruit trees, dangers to herself or her family, disturbance of her tranquility by day or of her repose by night, supposed to have been included in the compensation for damages. *Doughty* v. *Somerville R. R. Co., 2 Zab. 495.*

The order of the chancellor, directing the money to be paid into court, was arbitrary, being unauthorized by law. The chancellor had no jurisdiction to make the order. To authorize such an order, the title to the money must be clearly admitted in the answer. When this order was made, and until the filing of the supplemental bill, there was no mention of this money in any of the pleadings. The rule will be found in *2 Daniell's Ch. Pr. 1770,* and in § 2, *p. 1799;* and, also, in *Richardson* v. *Bank of England, 4 M. & C. 165, 177;* and, in New Jersey, in *McTighe* v. *Dean, 7 C. E. Gr. 81.*

*Mr. R. Allen, Jr.,* and *Mr. T. N. McCarter,* for respondent.

The mortgage-holder is entitled to have all the rents, issues and profits of the land to the extent of the amount due on his mortgage, and is entitled to the whole estate as it is. *Ergo,* the complainant is entitled to the award. *Ex parte Temple, 1 G. & J.; 1 T. R. 383, 218.* The crops as well as the land are security for the debt. *Stewart* v. *Doughty, 9 Johns. 108; 10 Johns. 360, 424; 1 Hayw. 17.* The mortgagee may put an end to the mortgagor's receiv-

ing rents, and the mortgage-holder receive the rents himself. *2 Ves. & B.* 253.

The mortgagee, by virtue of his mortgage, becomes entitled at law to immediate possession or to the receipt of the rents, if the land be in lease subsequent to mortgage.

Where lands are conveyed in mortgage, the mortgagee, as against the mortgagor and all persons claiming under him, is taken to be the owner of the fee. *Erskine* v. *Townsend, 2 Mass. 493, 551; Goodwin* v. *Richardson, 11 Mass. 469; Fay* v. *Brewer, 3 Pick. 203 ; Flagg* v. *Flagg, 11 Pick. 475 ; Blanchard* v. *Brooks, 12 Pick. 47, 57 ; Fay* v. *Cheney, 14 Pick. 399.*

Mortgagee may retain the emoluments and have an action for mesne profits not actually paid to the mortgagor. *7 Bing. 322 ; 9 Barn. & Cress. 245 ; Johnson* v. *Jones, 9 Ad. & El. 809 ; Doe* v. *Barton, 11 Ad. & El. 307 ; Keech* v. *Hall, 1 Doug. 22.* See *Law Magazine, Nov. 1856,* as to rents.

The mortgagee, as between himself and the mortgagor, is seized in fee of the freehold, although he can use it only for the purpose of the security. *Hughes* v. *Edwards, 9 Wheat. 499 ; Winslow* v. *M. Ins. Co., 4 Metc. 306 ; State* v. *Lawson, 1 Eng. 269 ; Clagett* v. *Salmon, 5 Gill & J. 314.*

Whilst public policy might forbid mortgage-holder from having injunction to restrain railroad company from constructing railroad (a public improvement), equity will enforce the principles on which proceedings for injunction are based and recognized, by appropriating the fund in court, the equivalent substituted in lieu of the waste (the result of the act) towards payment of the mortgage security, and protect mortgage-holder, complainant. *Anonymous, 1 Ves. Jr. 93.*

Solicitor-general moved for order to prevent *removal* of timber cut down. A. D. 1790. Lord Chancellor: "Trover might be brought for it. But many orders of this kind have been made. Take the order." *Whitfield* v. *Benett, 2 P. Wms. 241; 3 P. Wms. 267, 268 ; Lee* v. *Alston, 1 Ves. 78.*

Chancellor Kent, in *Watson* v. *Hunt, 5 Johns. Ch. 171,* recognizes same principle. *Spear* v. *Cutter, 5 Barb. 487.*

When mortgaged property has been turned into money, the rights of the mortgagee remain unaltered by the conversion, and he has a right to have the money applied on the mortgage. *Brown* v. *Stewart, 1 Md. Ch. 88.*

Court says a mortgagee, prior to the time when he may foreclose and sell, may, by a bill with proper amendments, as in this bill, obtain an injunction as a remedy. See *Clagett* v. *Salmon, 5 Gill & J. 314; 3 Powell on Mortg. 966; Jones* v. *Conde, 6 Johns. Ch. 77.*

The identity of the money in bank is important, for upon it depends the right of complainant to have it appropriated specifically towards the payment. *Jones* v. *Conde, 6 Johns. Ch. 77.*

Where either real or personal property, on which there is an outstanding mortgage, is turned into money, the rights of the mortgagee remain unaltered, and the court will direct the application of the money according to the rights of the parties as they existed previous to the alteration of the estate. *Astor* v. *Miller, 2 Paige 68.*

Supreme court affirmed chancellor's decree, and the court of appeals decreed: The fund in controversy may be properly treated as belonging to those who have established a prior equitable lien on the owner's interest in the land. *Danforth* v. *Suydam, 4 N. Y. 66.*

Proceedings for flowage under mill act, only the mortgagor made a party. Defence put in that the mortgagee should also be a party. Court decreed that it was not necessary for mortgagee to be a party, but mortgagee may intervene, if he chooses, to secure to himself his rights. *Paines* v. *Wood, 108 Mass. 163; Gooding* v. *Shea, 103 Mass. 164.*

A mortgage is *pro tanto* a purchase, and a *bona fide* mortgagee is as much entitled to protection as a *bona fide* grantee. *Pierce* v. *Founce, 47 Me. 514.*

In *45 Barb. 419,* consequential damages referred to in *Astor* v. *Hoyt,* mortgagee had released part of the premises.

Bright v. Platt.

The general principle is, that equity looks upon things agreed to be done as actually performed, as money covenanted to be laid out in land to be in fact real estate. *1 Fonb. Eq. B. 1 ch. 6 § 9.* It considers land directed to be sold and converted into money as money, and money directed to be employed in the purchase of land as land. *Craig v. Leslie, 3 Wheat. 563, 577 ; Benson v. Benson, 1 P. Wms. 130; Crabtree v. Bramble, 3 Atk. 680; Guidot v. Guidot, 3 Atk. 354; Seely v. Jugo, 1 P. Wms. 389.*

Money directed to be laid out in land is considered as land, and the interest goes as the profits would, after a purchase. *Att'y-Gen. v. Milner, 3 Atk. 114.*

Mr. Justice Washington, opinion in *Craig v. Leslie, 3 Wheat. 563,* and cases cited, says with the master of the rolls, in *Fletcher v. Ashburn, 1 Bro. C. C. 497,* that nothing is better established than this principle, that money directed to be employed in the purchase of land, and land directed to be sold and turned into money, are to be considered as that species of property into which they are directed is given. He adds: "The owner of this fund, or the contracting parties, may make money land." The cases establish this rule universally. This declaration is well warranted by the cases to which the master of the rolls refers, as well as by many others. See *Dougherty v. Bull, 2 P. Wms. 320; Yeats v. Compton, 2 P. Wms. 358; Trelawny v. Booth, 2 Atk. 453, 590.*

The courts regard the avails of land precisely the same as the land itself. *Hooper v. Goodwin, 18 Ves. 156; Att'y-Gen. v. Ward, 3 Ves. 327; Brudenell v. Boughton, 2 Atk. 268.*

The opinion of the court was delivered by

Dixon, J.

Annie E. Bright was the owner of a tract of land in Monmouth county, upon which she and her husband executed a mortgage for $9,372. This mortgage afterwards passed, by assignment, to the complainant, who, on its becoming

24

due, filed his bill in chancery for foreclosure. While the suit was pending, the New Egypt and Farmingdale Railroad Company commenced proceedings under its charter (*P. L. 1869 p. 472*) for the condemnation of a strip of this land, giving notice to only Mrs. Bright and her husband, as owners, and an award was therein made, which, for that strip and the damages done by taking the same, amounts to $6,610. Thereupon the complainant caused this sum to be paid by the railroad company into the court of chancery, and filed a supplemental bill, setting forth the condemnation proceedings, and bringing in the railroad company as a defendant, and praying that the sum in court should be paid to him on account of his mortgage, and that the land, subject to the estate of the railroad company, should be sold to pay the balance thereof. On final hearing, the chancellor decreed accordingly, and from that decree this appeal is taken by Mrs. Bright and her husband.

The claim of the appellants is, that the fund in court represents only the value of *their estate* in the mortgaged premises, and therefore belongs to them, and not to the mortgagee; and this claim they base upon the facts that they only were notified of the condemnation proceedings, and that the commissioners who made the award reported that the sum awarded be paid by the railroad company *to the appellants* for the land and damages.

That this fund does not represent merely the estate of the appellants, is manifest upon a reading of the provisions of the charter under which the condemnation was made. The eighth section of that law enacts that the commissioners shall examine the lands to be taken, and shall " make a just and equitable estimate or appraisement of the *value of the same*, and an assessment of damages as shall be paid by said company for *such lands* and damages." Clearly, this requires the commissioners to fix the value of the land, not the value of any particular estate therein. Such has always been the construction in this state of similar enactments. *Ross* v. *Eliz. & Som. R. R. Co., 1 Gr. Ch. 422; McIntyre* v.

*East. & Am. R. R. Co., 11 C. E. Gr. 425; Ross* v. *Eliz. & Som. R. R. Co., Spen. 230; State* v. *East. & Am. R. R. Co., 7 Vr. 181.*

An interpretation of this section, which devolved upon these commissioners the duty of estimating the value of each particular interest in the land to be taken, would not only do violence to the language of the provision, but would also impose upon these appraisers obligations which, with their limited means of investigation, their want of knowledge of nice legal and equitable distinctions, and their inability to settle authoritatively the rights of parties, they could not conscientiously assume to discharge. Their simple duty is to ascertain what sum of money is an equivalent for the rights which the railroad company seeks to acquire, and the injuries it is to inflict by the construction and operation of its road. That being done, the question as to the disposition of the fund arises.

Primarily, and in law, the fund belongs to those whom, as owners of the legal estate, the company has, by notice, made parties to the condemnation proceedings. The section of the charter before mentioned declares that the report shall be plenary evidence of the right of such owners to recover the amount of the valuation, with interest and costs, in an action of debt. In the present case, these owners are, undoubtedly, the appellants. But equity does not stop with a recognition of these bare legal rights. The money has taken the place of the land, and, in conscience, it is regarded as being subjected to responsibility for the claims of all persons interested in the land. *Wheeler* v. *Kirtland, 12 C. E. Gr. 534.*

By not making all these persons parties to the condemnation proceedings, as might have been done by notice, the company incurred a double risk. In the first place, if the fund had been paid over to these appellants, under circumstances which did not create an equitable estoppel in favor of the company against the other parties interested, the company might be compelled again to pay for the rights

which they would thus have attempted to acquire without compensation to the persons entitled thereto; and, in the next place, these parties, if dissatisfied with the award so made, might have insisted upon another appraisement by commissioners, of whose proceedings they should have due notice.

But, under the facts in this case, both of these dangers are obviated. The mortgagees are content with the sum fixed by the commissioners as the value of the land and damages, and the company has paid the fund into the suit where all the parties in interest are litigating for their rights in the land. It is the plain right of the company to have this fund withheld from the mere legal owners until the claims of the mortgagees are extinguished; it is the plain duty of the mortgagees to see that the fund is not paid out to the appellants without an assertion of their own claims upon it; and it is the plain duty of the court to dispose of the fund in the same manner as it would have disposed of the land for which the fund is substituted.

The decree should be affirmed.

Decree unanimously affirmed.