TOWN OF MONTCLAIR, BY THE MONTCLAIR REDEVELOPMENT AGENCY, PLAINTIFFS, v. JOSEPHINE D'ANDREA, *ET AL.*, DEFENDANTS.

Superior Court of New Jersey
Law Division

Decided November 4, 1974.

244

*Mr. V. Seeley Romaine* for plaintiff.

*Mr. Michael A. Cerreto* for defendants (*Messrs. Cerreto & LaPenna,* attorneys).

MARGOLIS, J. C. C., Temporarily Assigned. This is a condemnation case.

In August 1972 plaintiff Town of Montclair, by the Montclair Redevelopment Agency (Agency), commenced proceed-

ings pursuant to *N. J. S. A.* 40:55C–12(j) *et seq.*, to acquire defendant D'Andrea's land for the purpose of redeveloping an area in the Town of Montclair known as the Lackawana Plaza Project.

Plaintiff took title to the premises by filing a declaration of taking, and commissioners were appointed for the purpose of assessing value. The condemned property consists of land and a building thereon operated as Al's Restaurant, containing restaurant equipment and fixtures, and is presently in operation and paying a rental to Agency on a month-to-month basis.

Defendant D'Andrea appeals to this court from the commissioners' award. The matter was tried without a jury. Counsel have stipulated the value of the real estate, leaving for determination the question of compensation for the personal property in the restaurant.

D'Andrea contends she is entitled to just compensation and that under the Eminent Domain Act of 1971, *N. J. S. A.* 20:3–1 (hereinafter new act), this must be the value of the real estate as it is enhanced by the restaurant equipment and fixtures which include a neon sign, counters, stools, cash register, glass display case, work bench with dishwasher and sink, refrigerator, exhaust fan, broiler and grill, steam table, toaster, three-ton air conditioner, slicing machine, freezer, tables and chairs, plates, knives and forks. Many of these items are installed by electricity and plumbing connection.

"Property" is defined in the new act as follows:

(d) Property means land, or any interest in land, and (1) any building, structure or other improvement imbedded or affixed to land, and any article so affixed or attached to such building, structure or improvement as to be an essential and integral part thereof, (2) any article affixed or attached to such property in such manner that it cannot be removed without material injury to itself or to the property, (3) any article so designed, constructed, or specially adapted to the purpose for which such property is used that (a) it is an essential accessory or part of such property; (b) it is not capable of use elsewhere; and (c) would lose substantially all its value if removed from such property" [*N. J. S. A.* 20:3–3(d)]

D'Andrea maintains that the restaurant equipment would lose substantially all of its value if severed from the building. She relies on *State v. Gallant*, 42 *N. J.* 583 (1964), holding essentially that where there is a substantial difference between the value of a building with such articles and without same, compensation should reflect the enhanced value. This is generally referred to as the "functional unit" rule.

Agency argues that the "functional unit" rule, as expressed in *Gallant*, was not adopted by the Legislature when it enacted the new act and urges the court to evaluate the restaurant equipment articles as severed from the functioning restaurant on the grounds that they do not meet the criteria of "property" under the new act (20:3–2(d), in that (1) they are not essential accessories; (2) they are capable of use elsewhere, and (3) they will not lose substantially all their value if removed from the restaurant.

This court does not agree. It is true that the *Gallant* court interpreted the statute in existence prior to the new act, which authorized "just compensation for the lands, easements, rights of way or other property to be taken * * *." *N. J. S. A.* 20:1–3.1. The new act provides a definition of "property" in contrast to the absence of any such definition in the prior act. However, it is apparent that the Legislature did not do away with the *Gallant* rationale.

The *Gallant* decision and subsequent cases decided under the prior act found their basis in the *N. J. Const.* (1947), Art. I, par. 20, which must serve as the controlling force for the guidance of this Court.

That provision clearly states that "Private property shall not be taken without just compensation * * *." It is a mandate that this court must uphold, and we look to *Gallant* and subsequent cases for its proper construction.

In *Gallant* the court awarded full compensation to defendants for the value of looms situated in a building used for fabric weaving. The court found that

* * * From the stricken proofs it could be concluded that before condemnation the looms were an integral and valuable part of a going

business housed in defendant's factory. Upon condemnation defendants could either retrieve merely the looms secondhand value or, if they had elected to remove them to their new premises suffer the economic loss attendant upon the necessarily expensive and intricate removal procedures [at 589]

The court in *Gallant* held that the constitutional principles of justice and indemnity required that the owner be compensated for the articles at their enhanced value as attached to a going plant, and noted that whether the productive machine is conceptualized as a fixture or not, the injustice of noncompensation is equally obvious.

The value of a factory containing industrial equipment employed in the business for which the property is being used is ordinarily greater than that of an empty and idle building. Such equipment in place adds more to the value of the realty than its second-hand salvage value separated from the premises. An owner, who is under no duress, and where the building and machinery are a functional unit, would undoubtedly sell only at a price which would reflect that increased value. Where, therefore, a building and industrial machinery housed therein constitute a functional unit, and the difference between the value of the building with such articles and without them is substantial, compensation for the taking should reflect that enhanced value. This, rather than the physical mode of annexation to the freehold is the critical test in eminent domain cases. See *Harvey Textile Co. v. Hill*, 135 *Conn.* 686, 67 *A.* 2d 851 (Sup. Ct. Err. 1949) * * *. [*Gallant, supra*, at 590].

*Gallant's* stature as the principal authority in evaluating property remains undiminished.

In *Housing Authority of Clementon v. Myers*, 115 *N. J. Super.* 467 (App. Div. 1971), decided before the adoption of the new act, that court adopted the "functional unit" test provided in *Gallant* and awarded compensation for machinery and equipment in the condemnee's dress factory and retail outlet store at its enhanced value, as it was used by the owner in his business operations. The court found value to be "the full equivalent in money of the property taken." Further, there was no doubt in the mind of the *Myers* court that

\* \* \* the willing buyer purchasing defendant's premises in a free sale would be expected to include in the purchase price the enhancement of the value of the property by reason of the personalty in place \* \* \* To offer less to an unwilling seller forced by law to sell (or at best relocate) a going business appears to be a gross inequity \* \* \*. [at 474].

The court in *Myers* acknowledged the constitutional requirement of just compensation and concluded that its holding was in accordance with that standard. Though it found "a margin of discretion" for both courts and Legislature in order to assure provision of just compensation, the court warned that "The Legislature cannot in any event constitutionally mandate the payment of less than 'just compensation' as the courts determine that to be."

Agency, in support of its argument that the "functional unit" rule was abandoned by the Legislature in the new act, relies on *State v. P. & C. Realty Co.*, 121 *N. J. Super.* 554 (Law Div. 1972). However, *P. & C.* is not on point factually and holds to the contrary. There, plaintiff was denied compensation on the grounds that the machinery in question had already been removed from the owner's condemned clothing factory to a new location. The court held that the owner should not be compensated for the value of machinery retained by him but should be reimbursed for the moving of it, reasoning that to award compensation in such a case would constitute unjust enrichment. The court went on to say:

The rule of the *Myers* case has *not* been abrogated in any sense by the enactment of the Eminent Domain Act of 1971. The rationale of the case was not dependent solely upon statutory construction. Rather, it was founded upon notions of fundamental fairness in the light of "contemporary realities" in interpreting the constitutional phrase "just compensation" as it appears in *N. J. Const.* (1947), Art. I, par. 20. "The Legislature cannot in any event constitutionally mandate the payment of less than 'just compensation' as the courts determine that to be." *Myers, supra,* 115 *N. J. Super.* at 479. Moreover, the term "compensation" has been defined by the statutes as meaning "the just compensation which the condemnor is required to pay and the condemnee is entitled to receive according to law." *N. J. S. A.* 20:3-2(h). Undoubtedly the Legislature had in mind

the thought that the phrase "according to law" would include judicial decisions as well as legislative enactments * * *. [121 *N. J. Super.* 558; emphasis supplied]

 In the case at bar D'Andrea has not removed the restaurant fixtures and machinery and there is no question of unjust enrichment. Under the principles of *Gallant* and *Myers* there is no doubt that plaintiff is entitled to an award for the sound value of the property contained in the restaurant. Though the new statute sets forth a definition which in this factual setting is perhaps more confining than the prior broad statutory language, this court has reviewed all available materials pertinent to the legislative history of the new act and has 'found nothing which would indicate an intention to do away with the "functional unit" rule.

 In fact, the report of the Eminent Domain Revision Commission relies on *Gallant* as an authority. The report emphasizes that the determination of "just compensation" is a "judicial function which is said to be sufficiently elastic to adjust itself to the social needs of the times as they may change from generation to generation *City of Trenton v. Lenzner,* 16 *N. J.* 465 (1954)." *Report of Eminent Domain Revision Commission of New Jersey,* April 16, 1965. It goes on to define "just compensation" as "the full and perfect equivalent in money for the property taken. The owner is to be put in as good position pecuniarily as he would have occupied if his property had not been taken," *United States v. Miller,* 317 *U. S.* 369, 373, 63 S. Ct. 276, 280, 87 L. Ed. 336 (1942), or "a sum of money which fairly represents the transferable value of the property in the market place * * * in an evidential construction of a hypothetical sale between a willing and uncoerced seller and a like-minded buyer," *State v. Burnett,* 24 *N. J.* 280, 287 (1957).

Only where the current practices clearly deviated from this standard were changes in legislation recommended. However, they do not apply in the case at bar which deals solely

with personal property. Therefore, the court must assume that both the Eminent Domain Revision Commission and the Legislature were satisfied with the *Gallant* rule for determining just compensation and intended that that rule carry over into the new act.

The entire testimony produced at the trial consisted of the testimony of one expert witness for each party. The court had the opportunity to review the qualifications of both Richard Cohen, Agency's expert, and Richard Glander, who testified on behalf of D'Andrea, and was afforded an opportunity to observe the demeanor and credibility of the witnesses and the bases for their opinions.

It should be noted that both experts agreed that various items of equipment were capable of being used elsewhere and that its value would be substantially diminished if it were to be sold as secondhand equipment.

Cohen conceded that this was the first time he testified in the New Jersey courts or before New Jersey condemnation commissioners. He admitted to little, if any, familiarity with the interior of the premises in question; admitted he did not know how long the owner had been in business and, further, that some equipment could be particular in size and might not readily fit into a different size or shaped structure. He did testify that many of the items could be used at another location with the same efficiency.

Glander, on the other hand, who had more experience in matters in the New Jersey courts and agencies, testified that although some of the equipment was capable of being used elsewhere, it was an integral part of the building in which it is now located and its value would be substantially reduced upon removal therefrom.

The "sound value" of the assets as testified to by Cohen was $8,017 as compared to Glander's $8,421 — a difference of about 5%.

██ Both experts are qualified in their field. However, the court attaches greater weight to the testimony of Glander

and the basis used by him for his evaluation, and finds just compensation for D'Andrea for the sound value of the personal property in question to be the sum of $8,421.

Judgment accordingly.