137 N.J. Super. 271 (1975)
348 A.2d 825
NEW JERSEY SPORTS AND EXPOSITION AUTHORITY, PLAINTIFF,
v.
THE BOROUGH OF EAST RUTHERFORD ET AL., DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided November 13, 1975.
*276 Mr. William J. Ward for plaintiff.
Mr. Alfred A. Porro, Jr. for defendant Borough of East Rutherford.
Mr. Frederick M. Testa for defendants Daido and Steelcraft.
Mr. Robert Tobin for defendant Vicente Puig & Co.
Mr. Ronald J. Picinich for defendant Knickerbocker Development Corp. (Messrs. Picinich & Rigolosi, attorneys).
Mr. Allan Klinger for defendant Royal Worcester (Messrs. Cuccio, Klinger & Baldino, attorneys).
Mr. Eugene L. Dinallo for defendants East Rutherford Industrial Center, East Rutherford Industrial Park, Triangle Realty Co., C.D.C. Developers, Mayfair Infants Wear, Costa Enterprises, M. Vincent Costa, Royal Developers, Independent News and Music Distribution Center.
PETRELLA, J.C.C., Temporarily Assigned.
One contested facet of this condemnation action devolves about the question of whether any parties, in addition to defendants *277 Borough of East Rutherford (borough) and East Rutherford Industrial Center (Industrial Center) have direct compensable claims against plaintiff New Jersey Sports and Exposition Authority (Sports Authority). An affirmative determination permits appearance before condemnation commissioners, with appeal to a trial court, while a negative finding limits participation to allocation proceedings under R. 4:73-9(b).
The borough holds record title to approximately 89 acres of land which various defendants leased, subleased or occupied as of March 6, 1973, the date of taking by the Sports Authority. Industrial Center holds the "master lease" under which other defendants received assignments and/or subleases. All such leases and assignments were in effect and all tenants and subtenants were in possession on said date.
The master lease and certain subleases contain various types of provisions relating to condemnation which govern the claims and positions among party defendants.
The complaint herein was filed February 7, 1973, and declarations of taking and payment orders were filed March 6, 1973 and February 21, 1974. Payments into court of an aggregate of $13,152,000 were made as a result thereof.
On June 21, 1973 then Judge Pashman indicated that all interested parties would be "represented" at the hearings before the condemnation commissioners. However, he cautioned that introduction of proofs as to the value of the land would be limited to plaintiff Sports Authority, the Attorney General (representing the Natural Resource Council and Trustees of the School Fund), the borough record owner, and Industrial Center. The other interested parties[1] were reserved the right to consult freely with the defendants presenting proofs. A July 5, 1973 order embodied that determination *278 and extended the limitation to proofs as to the value of improvements. Subsequently, various defendants unsuccessfully moved for reconsideration of that ruling.
Applications were made later before Assignment Judge Trautwein and a hearing was ordered on the issue. In view of the rehearing determination by the assignment judge the law of the case doctrine presents no impediment here.
The Sports Authority disputes any right of those defendants not already expressly allowed to participate under any prior order to present proofs in condemnation proceedings of the value of improvements as they may affect land value or total compensation. The right to present proofs at an allocation proceeding under R. 4:73-9(b) is not disputed.
Plaintiff argues, among other things, that (1) to allow such proofs would violate the "unit rule" as in effect in New Jersey; (2) tenants in possession lack both standing and a compensable property interest, relying on Nichols, Eminent Domain, § 26.113, and (3) certain defendants (e.g., Independent News, Vicente Puig & Co., Daido-Steelcraft) are precluded from participation before condemnation commissioners because their leases renounced claims in favor of their respective lessors.
Defendants collectively or individually urge, primarily, that (1) under the 1971 Eminent Domain Act and case law they have a right to participate, and may even be precluded on appeal if they are not allowed to participate; (2) certain conflicts of interest would occur if they were not allowed to participate fully, and (3) violation of due process and equal protection. Royal Worcester Porcelain Co. also alleges that under paragraphs 26(d) and 31 of its lease it should be treated as a tenant with a choate option to extend its sublease for the balance of its landlord's term  claiming additional leasehold value and fixtures.

I
A brief review of the relevant case law is appropriate. Basic to the application of any eminent domain statute *279 is the theory that just compensation must be paid for property taken by public authority. U.S. Const., Amends. V and XIV; N.J. Const. (1947), Art. 1, par. 20; State v. Gallant, 42 N.J. 583, 587 (1964). The lessor is generally compensated upon a division of the fund for his reversionary interest, and the lessee for damages to his leasehold, out of the award, in allocation proceeding, absent contrary provisions in the lease, or based upon their agreement. See Wayne Co. v. Newo, Inc., 75 N.J. Super. 100, 104 (App. Div. 1962); N.J. Highway Auth. v. J. & F. Holding Co., 40 N.J. Super. 309, 316 (App. Div. 1956).
Where the leasehold terminates under a valid condemnation clause and the tenant by contract gives up his claim to any part of the award as to the value of his leasehold, he then lacks standing to participate in the condemnation as to the land value. See 4 Nichols, Eminent Domain, § 12.42 (1), and cf. N.J. Highway Auth. v. J. & F. Holding Co., supra, 40 N.J. Super. at 314-315. The parties are bound by the terms of their lease. Wayne Co., Inc. v. Newo, Inc., supra, 75 N.J. Super. at 108; and 4 Nichols, supra § 12.42 (3).
The value of condemned personalty would be a separate matter.
In condemnation cases the "unit rule" or undivided fee rule means that one award as a whole of just compensation is made which constitutes "a summation of all of the values of all of the separate interests in the property." N.J. Highway Auth. v. J. & F. Holding Co., supra. A lump sum verdict encompasses all interests in the land.
This rule has been consistently followed[2] in New Jersey; *280 Ross v. Elizabethtown & S.R. Co., 20 N.J.L. 230, 234-235 (Sup. Ct. 1843). In Schill v. Essex Freeholder Board, 98 N.J. Eq. 469, 470 (Ch. 1926), where the tenant unsuccessfully sought a separate award for damages to his business and the value of his tenancy, it was stated:
The complainant is not entitled to a separate award. Upon an award of a sum, the equivalent of the value of the land and the damage, and its tender or payment into court, possession may be taken ... and if the complainant has any particular estate or interest in the land for which he is entitled to special compensation, it must be made to him out of the general award. The rule is settled in this State. Bright v. Platt, 32 N.J. Eq. 362 [E. & A. 1880]; Crane v. Elizabeth, 36 N.J. Eq. 339 [E. & A. 1882] Zimmerman v. H & M R.R. Co., 76 N.J.L. 251 [Sup. Ct. 1908]; Herr v. Board of Education, 82 N.J.L. 610 [E. & A. 1912].
Nichols points out that some jurisdictions have carved exceptions to the undivided fee rule. One recognized exception allows participation by the lessee when the aggregate value of the separate interests exceeds the value of the unencumbered fee. See Nichols, op. cit., § 12.42 at 479. The tenants in the instant action argue for judicial recognition of such an exception in this State. This court is compelled to decline this request, considering a contrary determination by our Supreme Court.
In State v. New Jersey Zinc Co., 40 N.J. 560, 574 (1963), Justice Hall, speaking for a unanimous New Jersey Supreme Court, found:
Those having interests in the property less than ownership or claims arising by reason of the condemnation can only be compensated by appropriate division of the fund thereby created, to the extent *281 entitled. State by State Highway Com'r. v. Cooper, supra, 24 N.J., at p. 271; New Jersey Highway Authority v. J. & F. Holding Co., 40 N.J. Super. 309 (App. Div. 1956). Such claimants may not receive separate and additional compensation, c.f. New Jersey Turnpike Authority v. Bowley, 27 N.J. 549 (1958), cert. denied 358 U.S. 927, 79 S.Ct. 312, 3 L.Ed. 2d 301 (1959) as appears to be the case in some other states.
Similar requests were confronted by the Appellate Division in Wayne Co., Inc. v. Newo, Inc., 75 N.J. Super. 100 (App. Div. 1962), and N.J. Highway Auth. v. J. & F. Holding Co., supra, 40 N.J. Super. 309, and rejected in both instances.
The Sports Authority contends that in the absence of such a judicial finding of an exception to the unit rule, the tenants are barred from participation. However, this reasoning in part misconceives the tenants' position. Actually, the unit rule need not be violated if there is a lump sum award. The allocation procedures under R. 4:73-9 are designed to determine the interests of the respective parties when disagreement occurs.
The tenants seek participation before the commissioners or fact finder, not to seek a separate award but to submit separate proofs, if necessary, with respect to certain items of condemned property. They argue that if the lump sum verdict is to represent the whole or the unit, the whole should be the sum of its parts, and they should be able to present proofs as to value of those parts.
Tenant Puig also argues that the unit rule concept is no longer viable after recent New Jersey decisions. This will be discussed later. However, this court is not the forum to change the unit rule and it will be followed here.

II
The tenants argue that the definition of "property" under the 1971 Eminent Domain Act (in contrast to absence of a *282 definition in the prior statute[3]) gives them standing to present proofs.
Section 20:3-2(d) provides:
(d) "Property" means land, or any interest in land, and (1) any building, structure or other improvement imbedded or affixed to land, and any article so affixed or attached to such building structure or improvement as to be an essential and integral part thereof, (2) any article affixed or attached to such property in such manner that it cannot be removed without material injury to itself or to the property, (3) any article so designed, constructed or specially adapted to the purpose for which said property is used that (a) it is an essential accessory or part of such property; (b) it is not capable of use elsewhere; and (c) would lose substantially all its value if removed from such property; * * *
The tenants rely on this new definition. They reason that if their fixtures, machinery or equipment fit the applicable property definition, that property is "condemned" property and must be paid for in condemnation. If they seek to establish a higher value than the owner is interested in or willing to press for, the tenants argue, participation as to values is the only effective method of protecting their interests. This will assure that a lump sum award reflects all those items which affect the value of the property condemned. Thus, if the landlord is not adequately presenting relevant testimony, the lessee's attorney could be permitted to present further relevant non-cumulative evidence on the issue of value.
The tenants buttress this position by examining the terms "condemnor," "condemnee"[4] and "parties"[5] as defined by the Eminent Domain Act or court rule.
*283 The statute uses "condemnor" and "condemnee" somewhat interchangeably with the term "party." Since a condemnee must have an interest in property condemned, defendants argue that the rules and the statute require party status. Additionally, various defendants correctly point out that no reported case has been uncovered precluding a party-condemnee who has not given up or waived that right from condemnation proceedings, i.e., the statutory "hearings at which the parties and their witnesses may be heard, under oath. * * *." Defendants further argue that if N.J.S.A. 20:3-12(a) requires all condemnees to voluntarily waive appointment of commissioners, it cannot be said that certain condemnees are not to participate (unless they have given up that right), and it would be logical that they have standing to participate at a hearing they have the power to waive. This is certainly a sound position as to property that is condemned.
Thus, defendants advocate a form of participation similar to the type allowed in N.J. Zinc Co., supra, to the holder of an unexercised option to purchase realty. Such participation
* * * would take the form of presenting proof, or at least having the opportunity to do so, concerning the fair market value of the property in order that the award would be sufficient to satisfy the interest, if a subordinate one, or to give a person some benefit of his bargain if he stood on the same plane as the owner. [40 N.J. at 575]
Another argument of defendants is that lack of participation at the commissioners' hearing may preclude appeal. Herr v. Bd. of Education, 82 N.J.L. 610 (E. & A. 1912), had recognized that under the language of the former eminent domain statute anyone made a party as an owner of a property interest had the right of appeal. The language of the new Eminent Domain Act would arguably limit this right when it apparently tries to limit appeal only to those who "appeared", while others have to seek court approval. N.J.S.A. 20:3-13(a) states:
*284 (a) Parties. Any party who has appeared at the hearing of the commissioners, either personally or through an attorney, may appeal from the award of the commissioners. Such appeal shall be taken within the period and in the manner provided by the rules. The necessary parties to the appeal shall be only such parties who have appeared at the commissioners' hearings. Other parties may be admitted by the court pursuant to the rules. [Emphasis supplied]
Although under this provision "other parties may be admitted by the court pursuant to the rules," a party should not have to rely on application to the court. "Appearance" connotes more than merely being allowed to be present. Actually, that opportunity might be afforded any member of the public under the "Right-to-Know Law" or the court rules. See N.J.S.A. 10:4-1 as to public bodies. Active participation is implicit both under § 12(c) of the new statute (which says "hearings at which the parties and their witnesses may be heard") and prevailing case law based on N.J. Zinc Co. See also, Silberman v. U.S., 131 F.2d 715, 717 (1 Cir.1942).

III
In New Jersey the tenant has his interest separately evaluated only in the allocation or apportionment proceeding. "A lessee is not accorded the initial right to have his tenancy separately and specifically evaluated in the condemnation award." N.J. Highway Auth. v. J. & F. Holding Co., supra, 40 N.J. Super. at 314.
The tenant is given his chance to "fight it out" with his landlord during allocation proceedings where he can point to "the period of the unexpired term of the lease, the options, if any, therein to renew or of the landlord to terminate, the characteristics of the demised premises and the amount of the rent reserved." Id. at 316.
A tenant can be heard at the condemnation hearing as to the value of his property condemned. Property condemned must meet the N.J.S.A. 20:3-2(d) definition and not have been removed by the tenant, as illustrated in *285 State v. P. & C. Realty Co., Inc., 121 N.J. Super. 554 (Law Div. 1973). The question of what is condemned property under N.J.S.A. 20:3-2(d) is obviously a fact question for the trier of fact, subject to legal principles. See Silberman v. U.S., supra.
The following New Jersey cases discuss a tenant's right to participate. Nelson v. N.J. Short Line R.R. Co., 73 N.J. Eq. 187 (Ch. 1907), aff'd 74 N.J. Eq. 855 (E. & A. 1908); Newark v. Cook, 99 N.J. Eq. 527, 536 (Ch. 1926), aff'd o.b. 100 N.J. Eq. 581 (E. & A. 1927).
This court has no difficulty with the proposition that a defendant in a condemnation action claiming a right to compensation has a right to be present and participate in proceedings leading to a determination of the compensation to be granted. Such participation would be subject to the trial judge's control over participation by counsel to preserve order and avoid repetitious proofs. Certainly any tenant or option holder who has not given up or surrendered its claim to its landlord may participate within that framework. This is not a case of the condemnor trying to take improper advantage of a lease provision. It is a matter of standing. Thus, defendants Knickerbocker Development Corp. (in addition to its "ownership" of a building) and Royal Worcester Porcelain Co., Inc. can participate as subtenants who have not given up their claim to the value of their remaining lease term.
Royal Worcester also appears to stand in the position of a choate option holder (under paragraph 31 of its lease), for the balance of the lease estate of its landlord (itself a tenant) and to that extent may also participate as to the value of that option. See State v. N.J. Zinc Co., supra.
Subtenant defendants Daido, Daido-Steelcraft and Vicente Puig Co., have, on the other hand, given up that right as to their leaseholds and hence have no standing as to any claims except for property actually condemned.

*286 IV
Before pronouncement in State v. Gallant, supra, 42 N.J. 583, of the "functional unit" test, the primary factor in determining compensability upon condemnation of machinery and equipment was the distinction between personalty and fixtures and whether or not they were "removable." Port of N.Y. Auth. v. Howell, 59 N.J. Super. 343 (Law Div. 1960), aff'd 68 N.J. Super. 559 (App. Div.), certif. den. 36 N.J. 144 (1961) stated that "compensation for the fee interest does not include future loss of profits, expenses of removing removable fixtures. * * *" American Salvage Co. v. Housing Auth. of Newark, 14 N.J. 271 (1954) stated with respect to personalty that
The owner is ordinarily obliged to pay the expense of the removal of any movable personalty that he does not decide to abandon. This is because it is generally held that damages for injury to such personalty not included in the taking or the expense of moving it are not proper elements of compensation (covered under relocation expenses). * * * On the other hand, the owner is at liberty to abandon such personalty as he chooses when he surrenders possession, and in such case the condemnor takes the land as it is and must remove the personalty at its own expense. [Citations omitted].
The general rule as to fixtures of an owner of the land can be found in 4 Nichols, Eminent Domain (1974 ed.), § 13.12 (1) at pp. 13-28-29.
The rule in regard to machinery or other articles which were originally chattels but which have been so affixed to a building by the owner as to indicate an intention that they are to remain permanently and thereby form a part of the real estate is the same as in the case of buildings. In determining the market value of the premises, as a whole, the fixtures are to be taken into consideration, and the owner is entitled to recover for their destruction so far as they add to the market value of the premises taken. In ascertaining the just compensation to which an owner is entitled where fixtures are involved [concerned], the majority view  as in the case of buildings  is that the land and the fixtures are to be valued as a unit and not by taking the aggregate value of the land and fixtures as separately evaluated.
*287 State v. Gallant, supra, discarded the removability test and held that where there is a substantial difference between the value of a building with trade fixtures and without the same, compensation should reflect the enhanced value. Considering trade fixtures an "integral and valuable part of a going business," the court fashioned the functional unit rule to avoid limiting their value to second hand value, or having the owner suffer the loss on removal:
An owner, who is under no duress, and where the building and machinery are a functional unit, would undoubtedly sell only at a price which would reflect that increased value. Where, therefore, a building and industrial machinery housed therein constitute a functional unit, and the difference between the value of the building with such articles and without them, is substantial, compensation for the taking should reflect that enhanced value. This rather than the physical mode of annexation to the freehold is the critical test in eminent domain cases. [42 N.J. at 590].
Clementon Housing Auth. v. Myers, 115 N.J. Super. 467 (App. Div. 1971), involved removed equipment which contributed to the enhancement value of the building in a dress factory. This equipment, more easily removable than the looms in Gallant, was considered as enhancing the value of the premises as a functional unit. The Myers court thought it unfair to deny the owner of a business the enhancement value to the building of personalty which he chose to remove at his own expense. If it were left behind, the court reasoned, the condemnor would have to dispose of the abandoned personalty at its own expense and it usually would be of little value to the condemnor. It was concluded that if the condemnee was willing to remove equipment it would be illogical and impractical to penalize the condemnee for doing so. But the property owner could not have both enhancement value to the building of equipment in place and reasonable moving expenses. That would be an unfair penalty to the condemnor and the condemnor has the choice as to which one it pays.
P. & C. Realty also involved a dress factory in a situation similar to that in Myers. The State argued it had the option *288 to pay for moving expenses. The owner sought the functional unit value of its premises, taking the machinery into account, and contended that the new act denied the condemnor an option by virtue of the new definition of "property." The court found that since it was removed it was not property under N.J.S.A. 20:3-2(d), and hence the owner could not get enhancment value of the premises, having removed and retained possession of such machinery. Consequently, there would be recovery only of reasonable moving expenses. Since the new act was based on principles of fundamental fairness, the Myers rationale as to functional unit was still considered viable, despite the absence of the phrase "functional unit." State v. P. & C. Realty Co., supra, 121 N.J. Super. at 558.
State v. P. & C. Realty Co., supra, and Montclair v. D'Andrea, 131 N.J. Super. 243 (Law Div. 1974), were both decided under the 1971 Eminent Domain Act in light of Gallant and Myers.
In D'Andrea the condemnor challenged a tenant restaurant operator's right to have diner accessories valued as a functional unit. The agency argued that the functional unit rule was not adopted under the new act and that the "property" did not meet § 2(d) criteria. It cited P. & C. as support for its contention. D'Andrea, however, distinguished P. & C., since there all the machinery had already been removed. The property in D'Andrea does not appear to meet the definitions of § 2(d) property, and this court respectfully disagrees with the reasoning therein, not being bound by the decision of another trial court. See Mears v. Economy Brake Service, Inc., 78 N.J. Super. 218, 228 (App. Div. 1963); State v. Hudes, 128 N.J. Super. 589, 596 (Cty. Ct. 1973).
Basically, the rules regarding personalty of a lessee or subtenant were the same as for an owner-condemnee until the decisions in Gallant and Myers. For an owner-condemnee Gallant took into account enhancement value of the premises *289 by virtue of trade fixtures in place and highlighted the rationale for treating tenants and subtenants differently from the landlord.
It was pointed out in Gallant that although the statute does not distinguish between landlord and tenant as condemnees, the judicial interpretation of just compensation and property condemned has allowed the owner-landlord to attempt to show enhancement value to the building and land of functional unit equipment.
A lessee must remove his personal property from the leasehold upon the expiration of the lease. If the premises are condemned prior to the expiration of the lease, the lessee suffers no added expense on account of removing the personal property, and, since he is awarded the fair market value of the unexpired portion of his term, he is made whole without reimbursement for removal damages. This is not so where the condemnee is the owner in fee. It follows that cases involving the condemnation of leaseholds can be of no aid in establishing a rule as to the right to recover costs of removal in cases involving the condemnation of fee estates. [42 N.J. at 588]
There is no question that reasonable classifications can be made in treating various subject matters or categories of persons with varying interests in property. Therefore, there is no violation of equal protection in the case at bar.
Justice Haneman, in Airwick Industries v. Carlstadt Sewerage Auth., 57 N.J. 107 (1970), quoted Walters v. St. Louis, 347 U.S. 231, 237, 74 S.Ct. 505, 98 L.Ed. 660 (1953):
Equal protection does not require identity of treatment. It only requires that classification rest on real and not feigned differences, that the distinction have some relevance to the purpose for which the classification is made, and that the different treatments be not so disparate, relative to the difference in classification, as to be wholly arbitrary. [at 117]
Prior to Gallant and to acts such as the Relocation Assistance Act, N.J.S.A. 20:4-1 et seq., there was no compensation for moving personalty. The Gallant case does not *290 deal with the issue of whether a tenant has standing to prove that the value of his machinery and equipment enhances his landlord's building, or that the functional unit concept allows enhancement to be shown to the machinery.
Although the tenants here argue that because of the complexity of the leasing and subleasing elements, the distinctions in Gallant and Myers should not apply, there is little reason not to follow the same principles. As a trial court, this court is bound by decisional law. The proofs as to value would undoubtedly show the use of the premises. It seems circuitous to allow a tenant to prove enhancement of the landlord's dwelling by the tenant's fixtures, on the one hand, and then allow the tenant to plead in allocation that the enhanced building value increases the value of the condemned equipment or "property," on the other.
Under the 1971 Relocation Assistance Act a tenant can be reimbursed for expenses connected with the removal and disruption of business. However, it is also true, particularly where the business of the tenant is not terminated by condemnation, that he is not entitled for damages to property not condemned, or to "removal damages" which allegedly reduced the value of machinery and equipment taken from the premises.
If the property is condemned property under N.J.S.A. 20:3-2(d), either the property is fully compensated for by the condemning authority, or the condemning authority may allow the tenant's personal property to be removed. As to property which was condemned and paid for, there is no reason for relocation assistance even in the event (presumably with the condemnor's consent) the tenant removes such property. The tenant should and will be allowed to present proofs as to the value of such property condemned. However, the condemning authority might be entitled to a credit for the value of the property removed.
It is also clear that a lessee who is required to remove noncondemned property will be paid relocation expenses. *291 Since such property would have had to be removed in any event at the end of the lease at the tenant's expense, there is adequate reason not to take into account the interruption of the business,[6] particularly where the machinery is relocated, at the condemnor's expense, in a new place of business where the machinery and equipment are again operational. Thus, any diminution in value upon removal should be restored, theoretically, on reinstallation. The distinction between landlord and tenant is based on the fact that the tenant, except perhaps in very unusual circumstances, suffers no added expense in removing in condemnation what he would have to after his lease expires, if he remained as a tenant in good standing until that date. The classification is reasonable based on practical and theoretical considerations. See Airwick Industries, supra. The law in this State, binding on this court and applicable to this case, is that the condemning authority has the election as to whether personal property may be removed. The question *292 of what personal property has been condemned is, as indicated, a question of fact, if there is a bona fide dispute.

CONCLUSION
Except as limited herein, all condemnees with an interest in the property condemned (land, improvements, machinery or equipment) who claim all or some part of the condemnation proceeds, have a right as party defendants to participate in condemnation proceedings and present non-cumulative proofs, but only to the extent of their respective interests, and provided the proofs do not pertain to property for which removing expenses have been paid by relocation assistance.
The unit rule and functional unit rule apply. As to the value of the land, those parties previously allowed by court order may participate in presenting proofs, as well as those tenants who have not given up their right to participate in the value of their leasehold in accordance with the terms of their leases. As to improvements and to such machinery and equipment condemned not subject to payments under the Relocation Assistance Act, the respective party defendants may participate in the presentation of proofs.
As to nonremovable or condemned fixtures, machinery or equipment, the owners thereof may participate as to such items, not for a separate valuation thereof, but only to the extent necessary to insure that their value is considered in the condemnation proceedings.
Those having an interest in the property less than ownership, or claims arising by reason of the condemnation but not resolved by relocation assistance, may be compensated only by appropriate division of the fund or award, to the extent entitled, and subject to any contractual arrangements. It is obvious that no party is entitled to be compensated twice for the same property.
*293 For the reasons expressed, the prior order of the court as to parties entitled to present proofs will be modified, subject to the qualifications herein:
(1) To provide that defendants Royal Worcester and Knickerbocker may participate by virtue of their leasehold interests;
(2) That as to property actually condemned, i.e., property within the contemplation of the Eminent Domain Act (obviously any dispute as to whether personal property was condemned would be for the trier of fact), all owners thereof may participate except to the extent any owner may have contracted away entitlement to any specific part of the award;
(3) The commissioners will be instructed to return a lump sum award for the value of the property condemned;
(4) The commissioners may be furnished such further instructions as the court may deem appropriate; and
(5) Subsequent to the condemnation award any dispute as to the respective dollar interests of the participants will be determined in an allocation proceeding.
In view of the decision herein the court finds it unnecessary to reach the issue of whether any conflict of interest would be created if any party were denied participation.
NOTES
[1] Other interested parties include other tenants or subtenants, and mortgagees and lien holders. For convenience, tenants and subtenants are sometimes referred to generally as "tenants" in this opinion.
[2] Newark v. Cook, 99 N.J. Eq. 527, 532 (Ch. 1926) aff'd o.b. 100 N.J. Eq. 581 (E. & A.), cert. den. McEuen v. Cook, 274 U.S. 757, 47 S.Ct. 768, 71 L.Ed. 1337 (1927); and see also, 4 Nichols, Eminent Domain, § 12.36(1), at 426-428, which states:

* * * and it is still the law in the usual case, that when a tract of land is taken by eminent domain, as the land itself is taken by a paramount title rather than the separate estates of different persons having interests in the land, the compensation awarded is for the land itself and not for the sum of the different interests therein. The duty of the public to make payment for the property which it has taken is not affected by the nature of the title or by the diversity of interests in the property. The public pays for what the land is worth, and the amount so paid is to be divided among the various claimants, according to the nature of their respective estates.
[3] The prior statute, N.J.S.A. 20:1-1 et seq., authorized compensation for lands or other property to be taken.
[4] N.J.S.A. 20:3-2(c) provides: (c) "Condemnee" means the owner of an interest in the private property being condemned for a public purpose under the power of eminent domain.
[5] R. 4:73-2(a) defines "Parties" as "the record owner, the occupant if any, such other persons appearing of record to have an interest in the property and such persons claiming an interest therein as are known to the plaintiff shall be made parties."
[6] Consequential or special damages generally cannot be obtained for a period between a proposed condemnation and the actual taking. N.J. Turnpike Auth. v. O'Neill, 133 N.J. Super. 445 (App. Div. 1975), and Kingston East Realty v. State of New Jersey, 133 N.J. Super. 234 (App. Div. 1975). Statements in East Rutherford Industrial Park v. State, 119 N.J. Super. 352, 361, 373 (Law Div. 1972), would appear to have been dictum. New Jersey follows the rule that ordinary losses or other damages incidental to a taking, such as losses of profits from business interruption, loss to or destruction of goodwill are excluded as too difficult, remote and uncertain to measure accurately. State v. Gallant, 42 N.J. at 587; Beech Forest Hills, Inc. v. Morris Plains, 127 N.J. Super. 574, 582-583 (App. Div. 1974); Jersey City Redevelopment Agency v. Bancroft Realty, 117 N.J. Super. 418, 418-425 (App. Div. 1971); Newark v. Cook, 99 N.J. Eq. at 537; City of Trenton v. Lenzner, 16 N.J. 465, 468-476 (1954); Annotation 58 A.L.R.3d 566 (1974). Compare Washington Market Enterprises, Inc. v. Trenton, 68 N.J. 107, 122 (1975), which held that compensation might be allowed if substantial damages could be shown where condemnation was instituted concerning a redevelopment project but was eventually abandoned.