STATE OF NEW JERSEY, BY THE STATE HIGHWAY COM-
MISSIONER, PLAINTIFF-RESPONDENT, v. BERNARD
GALLANT AND MATILDA E. GALLANT, PARTNERS
TRADING AS CHARLES E. ROBERTS CO., *ET AL.*, DE-
FENDANTS-APPELLANTS.

Argued March 16, 1964—Decided July 7, 1964.

584

*Mr. Joseph A. Hoffman,* Deputy Attorney General, argued the cause for plaintiff-respondent (*Mr. Arthur J. Sills,* Attorney General of New Jersey, attorney; *Mr. Joseph A. Hoffman,* of counsel and on the brief).

*Mr. Alfred C. Clapp* argued the cause for defendants-appellants (*Messrs. Clapp & Eisenberg,* attorneys; *Mr. Arnold K. Mytelka,* on the brief).

The opinion of the court was delivered by

HANEMAN, J. The State of New Jersey, by the State Highway Commissioner, instituted proceedings to condemn certain

lands in Paterson owned by defendants. On appeal from the award of the Commissioners, the Law Division entered judgment for defendants for $52,000, which sum represented the value of land and buildings, but denied allowance for certain looms located on the premises. Defendants appealed to the Appellate Division, which affirmed the judgment of the Law Division in an unreported opinion. This court granted defendants' petition for certification. 41 N. J. 196.

Defendants adduced testimony in the Law Division concerning condition, value, removability and cost of removing the looms from their present location. At the end of defendants' case, plaintiff moved to strike this evidence on the ground that no compensation could be allowed for either the value or the cost of removal of the looms since they were personalty. The motion having been granted, plaintiff offered no counter-testimony. The factual recital which here follows is obtained from defendant's proofs.

In 1898 Charles E. Roberts established a narrow fabric weaving business in Paterson. Shortly prior to January 1917 he constructed a brick building at the present location in which he installed six looms on the first floor and six looms on the second floor. Half of these 12 looms had been used by Roberts at the former location. At about this time his daughter Matilda became a partner in the business which operated under the trade name of Charles E. Roberts Company. Subsequently Matilda's husband, Bernard Gallant, succeeded to his father-in-law's interest. The business operated continuously with these looms in their original positions from 1917 until 1961, when the property was taken by the State of New Jersey in connection with the construction of Interstate Highway 80.

One of the looms was nine feet long, seven were fifteen feet long and four were eighteen feet long. Their average weight was 8,000 pounds. With the exception of one self-powered loom, they were attached to a central power unit by a shaft and belt system. They were bolted to their respective floors with three inch lag screws. Although the looms were thus

attached, their removal from the building would be attended with more complications than the simple removal of the screws. Because of its length and weight, transportation of each loom as a complete unit would subject the shafting to prohibitive strains and stresses. The only safe method of transportation would be by dismantling at the old location and reassembling at a new location. This in turn would give rise to a complex engineering problem. Because of the age of the machines it would be necessary to make extremely accurate drawings of every elevation point so that when reassembled, every part would be in the same position relative to every other part as it originally had been, otherwise the parts of the equipment which had "worn together" over the years would no longer fit together in precisely the same way and severe damage would result. The total value of the looms where located is $52,000. The cost of moving would be $39,600 for dismantling and reassembling, plus transportation costs.

In striking the testimony of the value and cost of removing and reassembling the looms, the trial court held they were not compensable as part of the realty, purportedly applying the classic test of *Teaff v. Hewitt*, 1 *Ohio St.* 511 (*Sup. Ct.* 1853), as set out in *Fahmie v. Nyman*, 70 *N. J. Super.* 313 (*App. Div.* 1961).

The Appellate Division held that even if the looms might be regarded as fixtures under any aspect of the fixture doctrine, in the condemnor-condemnee situation, *removable fixtures* were not compensable, citing *Port of New York Authority v. Howell*, 59 *N. J. Super.* 343 (*Law Div.* 1960), aff'd 68 *N. J. Super.* 559 (*App. Div.* 1961). The court then found that the looms' removability was adequately demonstrated by the evidence.

We agree with the Appellate Division that compensability for the looms is not dependent upon a determination of whether they would be regarded as fixtures in other contexts. We disagree, however, that the test for compensation of the looms is their removability.

*Article* I, *par.* 20 of the *New Jersey Constitution* provides:

"Private property shall not be taken for public use without just compensation. \* \* \*"

■■ Consistent with this mandate the objective of the condemnation award is justly to indemnify the owner for the loss of his condemned property. The fair market value of the realty taken has been generally established in this State as a reasonable basis for such compensation. This value is measured by a price which would be agreed upon voluntarily between a hypothetical owner willing to sell and a hypothetical buyer willing to purchase. Although the concept is somewhat indefinite, it is thought that with some flexibility it will best serve to attain the goal in eminent domain proceedings of "justice and indemnity in each particular case." *City of Trenton v. Lenzner,* 16 *N. J.* 465, 476 (1954), *cert.* denied 348 *U. S.* 972, 75 *S. Ct.* 534, 99 *L. Ed.* 757 (1955).

■ The foregoing thesis ordinarily excludes compensation for other damages incidental to the taking, such as loss to or destruction of good will, expense of moving to a new location, profits lost because of business interruption, or inability to relocate. *City of Trenton v. Lenzner, supra;* Comment, 67 *Yale Law Journal* 61 (1957). Denial of such alleged losses has been judicially justified upon the reasoning that they are too difficult, remote and uncertain to measure accurately and their allowance might well result in unfounded and exaggerated awards which could exceed the constitutionally established norm. 67 *Yale Law Journal, supra,* at *p.* 71.

■ Our courts have also held that the fee owner is generally not entitled to compensation for personalty abandoned in the condemned premises nor for the expenses of removing personalty. See *American Salvage Company v. Housing Authority of Newark,* 14 *N. J.* 271 (1954). See also *Port of New York Authority v. Howell,* 59 *N. J. Super.* 343 (*Law Div.* 1960), affirmed 68 *N. J. Super.* 559 (*App. Div.* 1961), certif. denied 36 *N. J.* 144 (1961).

Moving expenses in connection with condemnation of leasehold interests have as well been disallowed, *Newark v. Cook,* 99 *N. J. Eq.* 527 (*Ch.* 1926), affirmed 100 *N. J. Eq.* 581 (*E. & A.* 1927), *cert.* denied *McEuen v. Cook,* 274 *U. S.* 757, 47 *S. Ct.* 768, 71 *L. Ed.* 1337 (1927); *Wayne Co., Inc. v. Newco, Inc.,* 75 *N. J. Super.* 100 (*App. Div.* 1962); *N. J. Highway Authority v. J. & F. Holding Co.,* 40 *N. J. Super.* 309 (*App. Div.* 1956). However, as stated in Note, 36 *Oregon L. Rev.* 180, at *pp.* 180–181 (1957):

> "A lessee must remove his personal property from the leasehold upon the expiration of the lease. If the premises are condemned prior to the expiration of the lease, the lessee suffers no added expense on account of removing the personal property, and, since he is awarded the fair market value of the unexpired portion of his term, he is made whole without reimbursement for removal damages. This is not so where the condemnee is the owner in fee. It follows that cases involving the condemnation of leaseholds can be of no aid in establishing a rule as to the right to recover costs of removal in cases involving the condemnation of fee estates."

There is no logical reason, however, why a condemnee, although compensated for the market value of his land and buildings, should suffer all other loss incidental to the taking thereof for the public benefit. See *Village of Ridgewood v. Sreel Investment Corp.,* 28 *N. J.* 121 (1958). And our courts have recognized that a denial of compensation for every such loss could result in a failure to comply with the constitutional requirement of just compensation. Thus where less than the entire parcel owned by a condemnee has been taken, allowance has been made for the consequential damages occasioned to an untaken parcel. *State Highway Commissioner v. National Fireproofing Corp.,* 127 *N. J. L.* 346 (*E. & A.* 1941); *Sterner v. Nixon,* 116 *N. J. L.* 418 (*E. & A.* 1936); *State by State Highway Com'r v. Williams,* 65 *N. J. Super.* 518 (*App. Div.* 1961); see *Ridgewood v. Sreel Investment Corp., supra,* 28 *N. J.,* at *p.* 125; *Edgewater, &c. R. R. Co. v. Valvolene Oil Co.,* 76 *N. J. L.* 789 (*E. & A.* 1909). And in *City of Trenton v. Lenzner, supra,* where the court disallowed

compensation for prospective loss of profits of the condemnee's business as a separate item of damage, the court said:

"The property being taken under the terms of R. S. 40:60–25.1 is land which has been operated profitably by the appellants for many years as a parking lot. Its fair market value, measured by the price which would voluntarily be agreed upon between the hypothetical owner willing to sell and the hypothetical buyer willing to buy, would be fixed after the due weighing of all the factors which customarily enter into their purchase and sale negotiations. A foremost factor in such sale of the parking lot would be its prospective earning power evidenced in considerable part by past earnings. Such sale of the parking lot would actually result in a transfer of the whole commercial enterprise involved—and, as a practical matter, the same result would flow from a forced transfer of the land to the city for public parking purposes. In the light of the foregoing there appears to be nothing in the judicial precedents which would preclude the commissioners from making an award which would truly constitute just and equitable compensation for the taking of the appellants' parking lot." (at pp. 478–479)

In *State by State Highway Com'r v. Burnett*, 24 *N. J.* 280 (1957), where it was virtually impossible to employ the comparable property sales rule in seeking fair market value, the court permitted the admission of evidence of the reproduction cost of unusual improvements over the State's objection that they were not adapted to the land.

We return now to the immediate problem before us, *i. e.,* whether the concept of just compensation as outlined above may require that defendants receive an award for their looms. We believe it may. As above noted, the record discloses that only the defendants introduced proof concerning the looms. This testimony was stricken on plaintiff's motion, and plaintiff offered no counter-evidence on that issue. From the stricken proofs it could be concluded that before condemnation the looms were an integral and valuable part of a going business housed in defendants' factory. Upon condemnation defendants could either retrieve merely the looms' secondhand value or, if they had elected to remove them to their new premises, suffer the economic loss attendant upon the necessarily expensive and intricate removal procedures.

As Justice [then Judge] Cardozo said in *Jackson v. State,* 213 *N. Y.* 34, 106 *N. E.* 758, *L. R. A.* 1915D, 492 (*Ct. of App.* 1914),

> "It is intolerable that the state, after condemning a factory or warehouse, should surrender to the owner a stock of secondhand machinery and in so doing discharge the full measure of its duty. Severed from the building, such machinery commands only the prices of secondhand articles; attached to a going plant, it may produce an enhancement of value as great as it did when new. The law gives no sanction to so obvious an injustice as would result if the owner were held to forfeit all these elements of value."

Judge Cardozo was answering the State's argument, approved in the lower court [as in the case *sub judice*], that although the machine in question might be regarded as a fixture between vendor and vendee, because they were removable they were not compensable. However, the injustice of noncompensation is just as obvious, regardless of whether or not a productive machine is conceptualized as a fixture. The same loss in value is caused by condemnation in either case.

██ The value of a factory containing industrial equipment employed in the business for which the property is being used is ordinarily greater than that of an empty and idle building. Such equipment in place adds more to the value of the realty than its second-hand salvage value separated from the premises. An owner, who is under no duress, and where the building and machinery are a functional unit, would undoubtedly sell only at a price which would reflect that increased value. Where, therefore, a building and industrial machinery housed therein constitute a functional unit, and the difference between the value of the building with such articles and without them, is substantial, compensation for the taking should reflect that enhanced value. This, rather than the physical mode of annexation to the freehold is the critical test in eminent domain cases. See *Harvey Textile Co. v. Hill,* 135 *Conn.* 686, 67 *A. 2d* 851 (*Sup. Ct. Err.* 1949); *Jackson v. State, supra.*

The issues above projected were not tried out because the compensability of the looms was tested solely by the mode of their physical annexation to the building. The matter must be remanded for a retrial consistent with this opinion. This will accord defendants the opportunity to adduce whatever testimony they may have to sustain their claim under the above tests, and the plaintiff an opportunity to controvert such evidence by cross-examination and affirmative proof.

Reversed and remanded consistent with the foregoing.

*For reversal and remandment*—Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*For affirmance*—None.