**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1113-17T4

ATLANTIC CITY SOUVENIR
& SNACKS, INC.,

    Plaintiff-Appellant/
    Cross-Respondent,

v.

PARKER MCCAY, HOWARD
COHEN, ESQ., KRIS KOLLURI,
ESQ., STEPHEN J. MUSHINSKI,
ESQ. and MICHAEL E.
SULLIVAN, ESQ.,

    Defendants-Respondents/
    Cross-Appellants.

_____

Argued February 6, 2019 – Decided June 13, 2019

Before Judges Fuentes, Accurso and Moynihan.

On appeal from Superior Court of New Jersey, Law Division, Cumberland County, Docket No. L-0086-15.

Scott B. Piekarsky argued the cause for appellant/cross-respondent (Piekarsky & Associates, LLC, attorneys; Scott B. Piekarsky, of counsel and on the brief; Mark R. Faro, on the brief).

Christopher J. Carey argued the cause for respondents/cross-appellants (McElroy, Deutsch, Mulvaney & Carpenter, LLP, attorneys; Christopher J. Carey, of counsel and on the brief; Jennifer L. Casazza, on the brief).

PER CURIAM

Parker McCay (Parker) and Howard Cohen and Michael E. Sullivan, two Parker attorneys, (collectively: defendants),[1] represented plaintiff Atlantic City Souvenir and Snacks, Inc. (AC Souvenir) in connection with the termination of AC Souvenir's lease at New Jersey Transit's (NJT) Atlantic City bus terminal consequent to a redevelopment plan by the Casino Reinvestment Development Authority (Authority) and Atlantic City Associates (Associates). Unsatisfied with defendants' representation during litigation related to that termination, AC Souvenir filed suit against defendants. It appeals from the trial court's September 25, 2017 order dismissing its complaint with prejudice.[2] That order

---

[1] Plaintiff voluntarily withdrew its claims against defendants Kris Kolluri and Stephen Mushinski. They are not parties to this appeal.

[2] Defendants cross-appeal from the trial court's orders of May 30, 2013 and September 8, 2017 denying their motions for summary judgment and reconsideration of that denial, respectively. "[A]ppeals are taken from orders and judgments and not from opinions, oral decisions, informal written decisions, or reasons given for the ultimate conclusion." Hayes v. Delamotte, 231 N.J. 373, 387 (2018) (quoting Do-Wop Corp. v. City of Rahway, 168 N.J. 191, 199

followed a Rule 104 hearing held pursuant to defendants' motions in limine, after which the court excluded the testimony of AC Souvenir's liability and damages experts.

AC Souvenir argues the motions in limine were precluded by the law of the case doctrine in light of the trial court's prior denial of defendants' motion for summary judgment and motion to reconsider the denial of that motion and because these motions were in effect, late-filed dispositive summary judgment motions. According to AC Souvenir, the trial court also erred in precluding the testimony of its damages expert and its liability expert's opinion that defendants should have asserted a claim against NJT and Associates based on equitable estoppel. We reject these arguments and affirm.

AC Souvenir, whose sole shareholders are Russell and Loretta Graddy,[3] operated an ongoing restaurant, newsstand and gift shop in NJT's Atlantic City bus station pursuant to a March 11, 1991 lease. The lease, in paragraph 21, provided for NJT's right of termination in the event of a major reconstruction of

(2001)). Defendants, therefore, are not permitted to file a cross-appeal based only on the way the court decided to adjudicate the case.

[3] We refer to Russell Graddy by his first name in order to avoid confusion with Loretta. We mean no disrespect by such familiarity.

the bus terminal that required AC Souvenir's space to be closed or if AC Souvenir changed its ongoing use.[4] AC Souvenir was entitled, under that lease provision, to continue its operation in "any other [t]erminal space for the remainder of [the lease] term" and NJT was required to pay it "the unamortized cost of the initial leasehold improvements and stationary capital equipment purchases."

A dispute between NJT and AC Souvenir – during which Parker[5] represented AC Souvenir – involving the relocation of the bus terminal resulted in an April 1998 settlement whereby the March 1991 lease was continued for ten years, retroactive to September 1, 1997, for space in the "new" bus terminal with two automatic five-year extensions.

The Authority later entered into an agreement with Associates that included the redevelopment of the "new" bus terminal property and the relocation of the bus terminal to yet another site, subject to the Authority's

---

[4] The same paragraph also provided for NJT's right of termination if the bus terminal was sold or developed, requiring AC Souvenir to vacate its space. Paragraph 22 of the lease provided for termination of the lease in the event of a condemnation from the date title vested in the condemnor.

[5] The firm was previously known as Parker, McCay & Criscuolo, PA.

acquisition of the "new" bus terminal from NJT. In furtherance of that plan, NJT sent AC Souvenir a notice dated December 22, 2003 terminating the lease.

AC Souvenir contends it engaged Parker to initiate discussions with NJT about the impending relocation and its concerns of having to again bear the costs of same as it was still paying a loan it took to pay for the costs of moving to the "new" bus terminal less than seven years prior. Parker sent a proposed settlement agreement to counsel for NJT and Associates on September 29, 2004.

Russell claims that the settlement with NJT in connection with the first relocation was successful because he retained the keys to the leased premises, and that he told Parker that he wished to follow the same tack during this litigation in order to foster a favorable resolution. Russell also claims defendants "worked out a tentative 2004 settlement" to which AC Souvenir agreed and that Cohen "falsely told that [Associates] promised a 'seamless transfer' and that [Associates] and NJT would pay for the move" to its third bus terminal location. He asserts he "later learned . . . defendants failed to ensure NJT's agreement to the terms" of the settlement but in reliance on Cohen's misrepresentations, "Cohen forced me to turn over my keys to NJT, without a signed agreement in place." Defendants' advice also caused AC Souvenir to "continue[] to pay rent to NJT in accord with the terms of the [1998 settlement

5

agreement] even though it was no longer operating a restaurant in either terminal." According to Russell, he was forced out after NJT received the keys, and Associates "refused to facilitate a 'seamless transfer'" because AC Souvenir's space was free for a new tenant. Although Russell maintains that defendants filed suit against NJT "in or about early 2005" after negotiations failed, Parker filed a complaint on behalf of AC Souvenir and the Graddys against NJT, Associates and the Authority during the first week of December 2004. AC Souvenir contends its litigation-goals were to: (1) secure payment for relocation expenses; (2) require defendants to cover its lost profits due to the relocation; and (3) credit it with the lease payments made to defendants after cessation of its business operations.

After further proceedings, suspended settlement negotiations and the scheduling of trial for February 2007, the parties reached a settlement, the terms of which were placed on the record in court on February 1, 2007 in Russell's presence: AC Souvenir was to be paid $183,000 to be held in escrow by Parker and released pursuant to a building schedule for the fit-out of the new 3000 square foot space that AC Souvenir was to occupy in the third bus terminal; AC Souvenir was to bear all fit-out costs, including approved signage; AC Souvenir was to pay rent for November and December 2006, January 2007 and thereafter

in accordance with the existing lease which was to remain in effect as amended; AC Souvenir would comply with security measures implemented by NJT; and the equipment from AC Souvenir's location at the "new" bus terminal would be available to it for removal from storage at its own cost. Russell was then questioned by one of Parker's lawyers and the judge:

> [PARKER ATTORNEY:] Otherwise, I think the terms are correct, is that correct, Mr. Graddy?
>
> MR. GRADDY: That's correct, yeah.
>
> [PARKER ATTORNEY:] So acceptable to you, sir, and –
>
> MR. GRADDY: Yes, it is.
>
> [PARKER ATTORNEY:] Thank you, sir.
>
> THE COURT: Okay, Mr. Graddy, you're satisfied with what we worked out here?
>
> MR. GRADDY: Yes, sir.
>
> [ASSOCIATES/NJT'S ATTORNEY:] Your honor, is the witness sworn? I –
>
> [PARKER ATTORNEY:] No, no, no. There is no need for that. Otherwise, I wouldn't ask his – his client to do that. I think if –
>
> THE COURT: Okay, well, I think I can solve that real quick. Mr. Graddy, you're telling us the truth, right?
>
> MR. GRADDY: Yes, sir.

THE COURT: Okay, and you want to enter into this settlement agreement freely and voluntarily?

MR. GRADDY: Yes, sir.

THE COURT: Nobody is forcing you to do this, sir.

MR. GRADDY: No, sir.

THE COURT: And you understand that there's nothing that you need explained at this point?

MR. GRADDY: That's correct, Your Honor.

THE COURT: And you're satisfied that this [c]ourt will retain jurisdiction in the event that there's a dispute in the future.

MR. GRADDY: Yes.

THE COURT: Okay.

[PARKER ATTORNEY:] I would like to ask the [c]ourt to satisfy myself, of course, just as counsel did that his client understands the same things, the [c]ourt ask the same questions.

THE COURT: Absolutely. Okay, your name for the record, please.

MS. GILL: Bernadette Gill.

THE COURT: Okay, Ms. Gill, and you understand the terms of the settlement agreement, correct?

MS. GILL: That's correct.

THE COURT: All right, and you realize that you could have a trial today rather than settling this case, but if you settle it you're going to give up your rights to a trial, do you understand all that?

MS. GILL: Yes, I do, Your Honor.

THE COURT: Okay, nobody is forcing you to enter into this agreement, right?

MS. GILL: That's correct, Your Honor.

THE COURT: Do you understand it all?

MS. GILL: Yes, I understand it all, Your Honor.

AC Souvenir argues defendants "misrepresented the legal meaning of the settlement terms . . . to induce it to enter into its agreement" as set forth on the record. Specifically, it alleges it relied on defendants' representations that the agreement included:

> the allocation of the fit[-]out and relocation costs to [Associates]; the installation of new equipment of equivalent or superior quality to [AC Souvenir's] equipment at [Associates'] expense; a seamless transfer with no loss of business for [AC Souvenir]; and compensation [for] any loss of business due to the relocation.

AC Souvenir asserts it sought to clarify the settlement terms on February 1, 2007, but defendants advised it "that it could not raise comments in court

regarding any of the outstanding details and that they would be resolved before the settlement was final."

AC Souvenir refused to execute the prepared written settlement agreement. NJT and Associates filed a motion to compel enforcement of the settlement which was granted. Thereafter, the court denied AC Souvenir's motion to vacate that order.

AC Souvenir filed suit against defendants and retained William H. Michelson and June M. Toth as experts. Michelson opined defendants committed legal malpractice by failing to bring what AC Souvenir describes in its merits brief as "two viable claims": an inverse condemnation action against Associates for the taking of its leasehold interest and that "equitable estoppel could have been successfully invoked against both NJT and [Associates]." Toth authored her opinion as to damages in a written report.

AC Souvenir argues defendants' motions in limine should have been denied because: the motions in limine "were in reality summary judgment motions filed for reconsideration on the day of trial"; defendants' prior motion for summary judgment was denied, as was their motion to reconsider that denial, and the law of the case doctrine precluded the motions in limine; Toth's testimony should not have been precluded because she did not offer a net

opinion; and Michelson's testimony that defendants should have asserted an equitable estoppel claim should not have been precluded as a net opinion.

The trial court's September 8, 2017 order granted only defendants' motions in limine to hold a Rule 104 hearing "to determine the admissibility of [AC Souvenir's] liability expert" – Michelson – and to limit damages to those sustained by AC Souvenir and not Russell, who was not a named plaintiff in the suit against defendants. The court reserved on the other motions in limine to bar: the testimony of Michelson, Toth and other witnesses, and certain claims for damages; the court denied defendants' motion to bifurcate.

Although defendants challenged that order because it also denied their motion for reconsideration of the order denying their motion for summary judgment,[6] AC Souvenir did not appeal from that order; that order is not listed in its notice of appeal or in the civil case information statement. We have made clear "it is only the judgment or orders designated in the notice of appeal which are subject to the appeal process and review." 1266 Apartment Corp. v. New Horizon Deli, Inc., 368 N.J. Super. 456, 459 (App. Div. 2004). We will not consider an order if the appellant "did not indicate in his notice of appeal or case

---

[6] The September 8, 2017 order provides the date of the order denying summary judgment was March 21, 2013; the order denying summary judgment provided in the record is dated May 30, 2013.

11

information statement that he was appealing from the order." Fusco v. Bd. of Educ. of City of Newark, 349 N.J. Super. 455, 460-61, 461 n.1 (App. Div. 2002).

We recognize that the September 25, 2017 order from which AC Souvenir did appeal reflected the court's rulings on issues on which it reserved. We will consider those rulings barring AC Souvenir's experts. Although the procedural issues now raised by AC Souvenir were the subject of the court's September 8 order from which it did not take an appeal, we nonetheless reject its procedural arguments.

The trial court properly exercised its discretion in ordering a hearing under Rule 104(a) which provides, "[w]hen the . . . admissibility of evidence . . . is in issue, that issue is to be determined by the judge. . . . [who] may hear and determine such matters out of the presence or hearing of the jury." As our Supreme Court held in Townsend v. Pierre, 221 N.J. 36, 53-54 n.5 (2015): "When it decides a motion to strike an expert report, a trial court may conduct a hearing under N.J.R.E. 104(a). N.J.R.E. 104(a) prescribes a procedure by which a trial court may 'assess the soundness of [an expert's] proffered methodology and the qualifications of the expert.'" (quoting Rubanick v. Witco Chem. Corp., 125 N.J. 421, 454 (1991)).

> The Rule 104 hearing allows the court to assess whether the expert's opinion is based on scientifically sound

reasoning or unsubstantiated personal beliefs . . . . In the course of the Rule 104 hearing, an expert must be able to identify the factual basis for his conclusion, explain his methodology, and demonstrate that both the factual basis and underlying methodology are scientifically reliable.

[Kemp v. State, 174 N.J. 412, 427 (2002).]

We note that during proceedings on the motions in limine, AC Souvenir's counsel stated, "We would agree that [a] 104 [h]earing would be appropriate at this point after the argument and colloquy that we've had."

The procedure employed by the trial court allowed it to hear Michelson's testimony regarding his written report and deposition testimony, about which the court "was troubled" because of "the language used by [the] expert." The court professed difficulty in understanding some of Michelson's opinions and was concerned that portions of his trial testimony might not be appropriately presented to a jury because they were based on speculation. The trial court explained that the Rule 104 hearing would allow it "to be fair to every[one], [and] when the expert appear[ed] before [the court] and showed . . . what he [was] going to show the jury, then [the court was able to] make a better decision" about which portions, if any, were admissible. We agree.

"Qualified expert testimony is admissible to assist the jury but there must be a factual and scientific basis for an expert's opinion. An opinion lacking in

foundation is worthless." Jimenez v. GNOC, Corp., 286 N.J. Super. 533, 540 (App. Div. 1996) (citations omitted). The trial court prudently used the Rule 104 hearing to determine the admissibility of the expert's opinions.

We disagree with AC Souvenir's argument that our holding in Cho v. Trinitas Regional Medical Center, 443 N.J. Super. 461 (App. Div. 2015), precluded defendants from moving in limine to bar its experts' opinions because the motions were dispositive. In Cho, defendant's motions in limine were filed the day after the trial call. Id. at 467-68. Here, defendants filed the notice of motions in limine on August 30, 2016. The trial court granted the motion to hold a Rule 104 hearing on September 8, 2017, well in advance of the October 2, 2017 scheduled trial date. Thus defendants did not "misuse . . . the motion in limine" as "a summary judgment motion that happen[ed] to be filed on the eve of trial." Id. at 471. AC Souvenir had ample notice of the motions, responded to same, participated in the hearing in which Michelson testified and argued against the motions thus obviating any of the due process concerns we voiced in Cho, 443 N.J. Super. at 473-75. And, as we determined, the hearing allowed the judge to fulfill his gatekeeper function. See In re Accutane Litig., 234 N.J. 340, 347-48, 386 (2018).

We also reject AC Souvenir's contention that the prior decisions denying defendants' motions for summary judgment and reconsideration of that denial constituted the law of the case regarding the experts' testimony. A careful review of the transcript of proceedings reveals that AC Souvenir's law-of-the-case arguments were raised in connection with defendants' motion for reconsideration of the summary judgment denial. In that some of the motion in limine issues were intermixed with the reconsideration issues during argument, we consider the law-of-the-case argument as it relates to the in limine motions.

As we observed in <u>Jacoby v. Jacoby</u>, 427 N.J. Super. 109, 117-18 (2012):

> The doctrine is not an absolute rule as "'the court is never irrevocably bound by its prior interlocutory ruling[.]'" In fact, it is well-accepted that "[a] hallmark of the law of the case doctrine is its discretionary nature, calling upon the deciding judge to balance the value of judicial deference for the rulings of a coordinate judge against those 'factors that bear on the pursuit of justice and, particularly, the search for truth.'" Further, the doctrine is to "be applied flexibly to serve the interests of justice."
>
> [(Alterations in original) (Citations omitted).]

The trial court did not abuse its discretion in hearing the motions in limine. The court reviewed the experts' reports and deposition testimony and, notwithstanding the prior denial of summary judgment, had questions as to the admissibility of the opinions. The lack of clarity in the record before the trial

15

court that necessitated Michelson's testimony – new evidence that was not before the court during the summary judgment motion – informed the trial judge's evidentiary ruling on the expert testimony. In balancing those considerations against the deference that was due the prior summary judgment decision, we do not discern that the trial judge was bound to follow that decision. Gonzalez v. Ideal Tile Importing Co., Inc., 371 N.J. Super. 349, 356 (App. Div. 2004), aff'd, 184 N.J. 415 (2005). As was the case in Gonzalez, "an order denying summary judgment is not subject to the law of the case doctrine because it decides nothing and merely reserves issues for future disposition." Ibid. The issue reserved here was the admissibility of the expert opinions.

We address AC Souvenir's arguments regarding the admissibility of its experts' opinions. Substantively, AC Souvenir argues its damages expert, Toth, should have been allowed "to testify because her report was not a net opinion" and its liability expert, Michelson should have been allowed to testify as to its equitable estoppel claim. Contrary to AC Souvenir's contention, the trial court did not dismiss its complaint based on its findings regarding Michelson's equitable estoppel theory "applying the summary judgment standard." The court's decisions regarding the experts' opinions were based on its appraisal of the admissibility of that evidence.

"[T]he decision to admit or exclude evidence is one firmly entrusted to the trial court's discretion." State v. Scott, 229 N.J. 469, 479 (2017) (alteration in original) (quoting Estate of Hanges v. Metro. Prop. & Cas. Ins. Co., 202 N.J. 369, 383-84 (2010)). We "apply a deferential standard in reviewing a trial court's evidentiary rulings and uphold its determinations 'absent . . . an abuse of discretion.'" Id. at 479 (quoting State v. Perry, 225 N.J. 222, 233 (2016)). An abuse of discretion may only be shown if there is a clear error in judgment or a ruling that would result in a manifest denial of justice. Ibid.

Turning first to Michelson's opinion that "equitable estoppel could have been successfully invoked against both NJT and [Associates]," we recognize our Supreme Court's

> description of equitable estoppel:
>
> > Conduct amounting to a misrepresentation or concealment of material facts, known to the party allegedly estopped and unknown to the party claiming estoppel, done with the intention or expectation that it will be acted upon by the other party and on which the other party does in fact rely in such a manner as to change his position for the worse gives rise to an equitable estoppel.
> >
> > [Carlsen v. Masters, Mates & Pilots Pension Plan Tr., 80 N.J. 334, 339 (1979).]

As that description recognizes, essential to a finding of estoppel is a misrepresentation of material fact by one party and an unawareness of the true facts by the party seeking an estoppel.

[Horsemen's Benevolent & Protective Ass'n v. Atl. City Racing Ass'n, 98 N.J. 445, 456 (1985).]

"It is a doctrine designed to prevent a party's disavowal of previous conduct if such repudiation 'would not be responsive to the demands of justice and good conscience.'" Carlsen, 80 N.J. at 339 (quoting W. Jersey Title & Guar. Co. v. Indus. Tr. Co., 27 N.J. 144, 153 (1958)).

Citing to our decision in Williams Scotsman, Inc. v. Garfield Board of Education, 379 N.J. Super. 51 (App. Div. 2005), Michelson noted that "equitable estoppel has been applied against government entities to prevent 'manifest injustice.'" He continued,

I think equitable estoppel could have been successfully invoked against both NJT and [Associates], to prevent the manifest injustice that I see here. It simply offends justice that they were taking a store containing [ten]-year-old fixtures and equipment, and thereby requiring [AC Souvenir] to absorb the cost of all-new equipment and materials, if it wanted to stay in business.

The trial court did not find the elements of equitable estoppel present under the facts of the case because, despite settlement negotiations, there was never a

meeting of the minds as to final terms because of the unmet demands of AC Souvenir.

Michelson did not delineate any misrepresentations or concealment of facts by NJT or Associates.  Nor does he point to any term that AC Souvenir relied upon or could have relied upon to its detriment.  Although it argues in its merits brief that it relied on Associates' representations during settlement discussions, AC Souvenir did not have the right to rely on terms discussed during an unsettled negotiation.  See Weichert Co. Realtors v. Ryan, 128 N.J. 427, 435 (1992) ("Where the parties do not agree to one or more essential terms . . . courts generally hold that the agreement is unenforceable.").

Our Rules of Evidence require that an expert's opinion be based upon "facts or data . . . perceived by or made known to the expert . . . before the hearing."  N.J.R.E. 703.  "An expert's conclusion is considered to be a 'net opinion,' and thereby inadmissible, when it is a bare conclusion unsupported by factual evidence.  In other words, an expert must '"give the why and wherefore" of his or her opinion, rather than a mere conclusion.'"  Creanga v. Jardal, 185 N.J. 345, 360 (2005) (citations omitted).  The Townsend Court warned against the admission of

> unsubstantiated expert testimony [because it] cannot
> provide to the factfinder the benefit that N.J.R.E. 702

19

envisions: a qualified specialist's reliable analysis of an issue "beyond the ken of the average juror." Given the weight that a jury may accord to expert testimony, a trial court must ensure that an expert is not permitted to express speculative opinions or personal views that are unfounded in the record.

[221 N.J. at 55 (citations omitted).]

Michelson failed to connect any facts in the record involving NJT's or Associates' conduct to an industry standard related to the equitable estoppel doctrine; he offered only his personal opinion about the hardship alleged suffered by AC Souvenir. We do not perceive any abuse of discretion in the trial court's preclusion of Michelson's testimony regarding equitable estoppel.

Although the trial court ruled that Michelson could testify as to AC Souvenir's inverse condemnation claim, it found Toth's opinion was "inadequate to represent damages in an inverse condemnation case since it dealt with expenses incurred by [AC Souvenir and Russell] related to forced relocation." The court noted Toth admitted in her report that she "was asked to prepare calculations on economic damages as a result of the actions and inactions of [defendants] for purposes of settlement discussions. . . . 'But [she] was not asked to perform a loss profit analysis or perform a business evaluation.'" The court found Toth based her opinion on depreciation schedules, corporate returns and

compilation reports prepared by AC Souvenir's accounts and prepared a report that

> summarizes the shareholder loans and gives schedules for capitalized assets, schedule of expenses from 2004 corporate return, and a summary of the damages and the report under the shareholder loan activity, and it lists $513,074.94 for the period of January 1st, 2005 to April 10, 2010, and also lists $506,253.71 as accounting, legal, and professional fees related to litigation and $55,000 for rent location. In the, under capital – in the capitalized assets the report indicates a total of $928,517.18, including furniture, fixtures, improvement, machinery and equipment and vehicles with associated useful lives, the largest useful life being the life expectancy of 39 years, and values that at $575,739.32. The report then sets out depreciation of approximately $500,000, and results in a net book value of $428,975.52. The report also indicates professional accounting expenses of $128,707. The report then adds direct costs from 2005 to 2010 and direct cost from 2004 arrives at $634,906.71 as the total damages.

The trial court, however, recognized that the proper measure of damages for the taking of a leasehold was the value of the leasehold interest and that Toth did not calculate that amount. The court also found Toth "simply [took the] depreciated value of [AC Souvenir's] undifferentiated equipment and [its] balance sheet" but did not set forth the value of each item nor calculate the amount by which the leasehold was increased by any equipment. The court observed Toth did not explain "where these numbers should be utilized. They're

21

just numbers from the . . . books and records of the corporation, which may be a start [of an] evaluation"; as such, the court ruled Toth's opinion inadmissible.

The trial court did not abuse its discretion in so ruling. In an eminent domain case, we held that a

> tenant's recoverable damage, if any, is ascertained and determined fundamentally by a comparison of the fair value of the leasehold interest and the rent reserved. The burden descends upon the tenant to disclose by a fair preponderance of the evidence that the fair market value of his lease was greater than the rent reserved.
>
> [New Jersey Highway Auth. v. J. & F. Holding Co., 40 N.J. Super. 309, 316 (App. Div. 1956) (citation omitted).]

Eight years later, our Supreme Court held:

> "If the [leased] premises are condemned prior to the expiration of the lease, the lessee suffers no added expense on account of removing the personal property, and, since he is awarded the fair market value of the unexpired portion of his term, he is made whole without reimbursement for removal damages."
>
> [State ex rel. State Highway Comm'r v. Gallant, 42 N.J. 583, 588 (1964).]

In J. & F. Holding, we said, "a tenant may not claim from the award damages for his loss of business, profits, good will, fixtures, cost of removal and the like." 40 N.J. Super. at 316. The Gallant Court, likewise held, as a general rule, "damages incidental to the taking, such as loss to or destruction of good

22

will, expense of moving to a new location, profits lost because of business interruption, or inability to relocate" are ordinarily excluded from recovery. 42 N.J. at 587. "Denial of such alleged losses has been judicially justified upon the reasoning that they are too difficult, remote and uncertain to measure accurately and their allowance might well result in unfounded and exaggerated awards which could exceed the constitutionally established norm." Ibid. The Court added, fee owners are "generally not entitled to compensation for personalty abandoned in the condemned premises nor for the expenses of removing personalty." Ibid. The Court specifically recognized prior decisions, including J. & F. Holding, that ruled "[m]oving expenses in connection with condemnation of leasehold interests have . . . been disallowed." Id. at 588.

Since Toth's calculation of damages did not relate to any legal standard, the trial court properly excluded her opinion.

"[I]n nearly all malpractice cases, plaintiff need[s] to produce an expert regarding deviation from the appropriate standard." Garcia v. Kozlov, 179 N.J. 343, 362 (2004). "As 'the duties a lawyer owes to his client are not known by the average juror,' expert testimony must necessarily set forth that duty and explain the breach." Buchanan v. Leonard, 428 N.J. Super. 277, 288 (App. Div. 2012) (quoting Carbis Sales, Inc. v. Eisenberg, 397 N.J. Super. 64, 78 (App.

Div. 2007)). Where the standard of care that should guide an attorney in the situation presented would not be readily apparent to persons of average intelligence and ordinary experience, the assistance of an expert opinion is required. See id. at 289.

Absent Michelson's testimony on liability under the equitable estoppel doctrine and Toth's testimony about damages under the inverse condemnation claim, AC Souvenir could not prove its case. See Innes v. Marzano-Lesnevich, 435 N.J. Super. 198, 212 (App. Div. 2014), (recognizing a plaintiff's failure to produce expert testimony in legal malpractice claims is often fatal), aff'd as modified, 224 N.J. 584 (2016). We determine the trial court's holdings were correct.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

24

A-1113-17T4