**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3684-21

PEMBERTON TOWNSHIP,

    Plaintiff-Respondent/
    Cross-Appellant,

v.

ROCCO BERARDI and
ANTONIA BERARDI,

    Defendants-Appellants/
    Cross-Respondents,

and

DAIRY QUEEN, NU SOUL
CAFÉ, GRISSEL CATALAN,
JAY'S STUDIO JEWELERS,
ELLY PREMIUM LAUNDRY,
ERNIES BARBER SHOP,
DR. LORRAINE VARELA, DPM,
PEMBERTON TOWNSHIP
MUNICIPAL UTILITIES
AUTHORITY and BOARD OF
CHOSEN FREEHOLDERS OF
THE COUNTY OF BURLINGTON,

    Defendants.

_____

Argued December 16, 2024 – Decided September 23, 2025

Before Judges Gummer and Berdote Byrne.

On appeal from the Superior Court of New Jersey, Law Division, Burlington County, Docket No. L-0954-18.

Peter H. Wegener argued the cause for appellants/cross-respondents (Bathgate, Wegener & Wolf, PC, attorneys; Peter H. Wegener, on the briefs).

Andrew Bayer argued the cause for respondent/cross-appellant (Pashman Stein Walder Hayden, PC, attorneys; Andrew Bayer, of counsel and on the briefs; Doris Cheung, on the briefs).

The opinion of the court was delivered by

GUMMER, J.A.D.

In this eminent-domain action, defendants Rocco Berardi and Antonia Berardi appeal from a series of orders culminating in a final judgment that set the amount of just compensation for property they respectively owned: a shopping center and adjoining vacant lot.[1] Defendants fault the trial court for denying their motion to bar evidence regarding a thirty-year-old lease agreement, thereby enabling the arbitrator, who decided the valuation issue by consent, to consider the lease. Plaintiff Pemberton Township cross-appeals,

---

[1] We refer to Rocco Berardi and Antonia Berardi collectively as defendants. Because of their shared last name, we use their first names when referencing them individually. We mean no disrespect in doing so.

A-3684-21

challenging the trial court's determination of the valuation date and refusal to exclude as a net opinion the report and testimony of one of defendants' expert witnesses. Perceiving no error or abuse of discretion by the trial court, we affirm.

I.

Defendants and the Township have engaged in extensive litigation regarding the property at issue. See Twp. of Pemberton v. Berardi (Berardi I), 378 N.J. Super. 430, 434 (App. Div. 2005); Berardi v. Twp. of Pemberton (Berardi II), No. A-1973-11 (App. Div. July 25, 2013). We focus on the aspects of their history that are particularly relevant to this appeal.

Defendants purchased the Browns Mills Shopping Center and an adjacent vacant lot in 1988 for $2,475,000. Rocco was the owner of the shopping center, and Antonia was the owner of the adjacent lot. After defendants' purchase of the property, the shopping center's anchor tenant, ACME Markets, Inc., continued to rent its space for $0.77 per square foot pursuant to an existing long-term lease that was executed in 1962 and had a fifteen-year term with seven additional five-year options, totaling fifty years. Other tenants in the shopping center paid rent at higher rates; some units at the shopping center were at times vacant.

3

On May 4, 2018, the Township filed a verified complaint seeking a judgment permitting the Township to use its powers of eminent domain to take possession of the property. The Township asserted it was "acquiring a fee simple interest" in the property. With no opposition, the trial court on July 19, 2018, entered an order for final judgment, "determining that the Township [wa]s duly vested with and has duly exercised its powers of eminent domain to acquire" the property. In that order, the court also appointed commissioners "to examine and appraise" the property and "to assess the damages to be sustained by the taking and condemning of" the property.

Following the entry of that order, the parties litigated the issue of what constituted just compensation for the Township's taking of the property. The court issued a series of orders resolving motions regarding that dispute, including three orders that are the subject of this appeal and cross-appeal. On February 20, 2019, the court on defendants' motion set the date of valuation as January 27, 1994, which was the date the Township adopted a resolution designating the property as an "area in need of redevelopment" pursuant to the Local Redevelopment and Housing Law, N.J.S.A. 40A:12A-1 to -49. In an October 14, 2020 order, the court denied defendants' motion to bar the Township's appraisal expert witness from using the ACME contract rent in his

A-3684-21

calculations and from "introducing evidence of sales of the leased fee of shopping centers." In an August 24, 2021 order, the court denied the Township's motion to exclude as a net opinion the report and testimony of defendants' expert witness.

On October 20, 2021, the court entered a consent order transferring the case to binding arbitration and dismissing the case without prejudice but preserving the court's jurisdiction to hear appeals of the February 20, 2019, October 14, 2020, and August 24, 2021 orders.

During the arbitration, the Township presented real estate appraisal expert Jerome McHale, who employed an income capitalization approach to value defendants' interest in Lot 19, the property comprising the shopping center, as a leased fee interest. McHale determined that, because ACME, the anchor store, was subject to a long-term lease for the foreseeable future, the value of the property should be extrapolated from the contract rent of $0.77 per square foot. After calculating the property's gross income from that figure and making certain adjustments to arrive at a net operating income of $244,448, he applied an 11% capitalization rate to estimate the total value of the property at $2,200,000. For Lot 18, the adjacent vacant lot, he used the sales comparison approach to arrive at a market value of $60,000.

A-3684-21

Defendants presented real estate appraisal expert Jon Brody, who also used the income capitalization approach to value their interest in Lot 19, but he valued it as a fee simple interest. Brody estimated the market rent for the property to be $8.50, used that figure to calculate a net operating income of $370,595, and then applied a capitalization rate of 9.13% to arrive at a total value of $4,059,000. He concluded the market value of Lot 18 was $236,000.

Defendants also presented Charles Land, an expert in the appraisal of furniture, fixtures, and equipment (FF&E). He cataloged and determined the value of hundreds of FF&E items, ranging from commercial equipment to basic fixtures, in the buildings on Lot 19 and estimated their total depreciated value as $616,635. Brody concluded those items likely enhanced the value of the property by approximately $550,000, "round[ing]" Land's figure down to account for any overlap in the valuations. Thus, defendants, who had purchased the property in 1988 for $2,475,000, sought a total of $4,845,000 in just compensation based on a valuation date of January 27, 1994, nearly doubling the amount they had paid when they purchased the property less than six years before.

The arbitrator issued an opinion and award on March 22, 2022, valuing the property at $2,947,216. The arbitrator acknowledged that both real estate

6

appraisal experts had utilized the income capitalization approach to estimate the market value of Lot 19. He described the ACME building as "old," in "below average condition," and "grossly substandard in size for a supermarket." Without considering the ACME contract rent, the arbitrator determined "the market rent[]" for the ACME building was $4.00 per square foot. He then considered the ACME contract rate, finding "[a]ny reasonable buyer would certainly consider the financial impact of this lease in determining what it would be willing to pay for the subject site. To suggest that the ACME lease can be ignored in determining its market rent is manifestly unreasonable." Factoring in the contract rent, the arbitrator found the market rent for the ACME building was $2.00 per square foot. He adopted Brody's estimates of the annual rent of the other stores and total operating expenses, applied a "7% Vacancy and Collection Loss" and a 10.25% capitalization rate, and concluded the market value of Lot 19 as of January 27, 1994, was $2,688,556. In addition, he determined the FF&E enhanced the value of the property by an additional $163,035. Based on the comparable sale he believed was most appropriate, the arbitrator found the market value of Lot 18 was $95,625.

On June 21, 2022, the trial court issued a consent order confirming the award and entering final judgment in favor of defendants in the amount of

7

$2,947,216. Consistent with the October 20, 2021 consent order, the parties retained the right to appeal the February 20, 2019, October 14, 2020, and August 24, 2021 orders.

Defendants and the Township referenced numerous orders in their respective notices of appeal. However, during argument before this court, counsel acknowledged that, consistent with the parties' agreement as memorialized in the October 20, 2021 and June 21, 2022 consent orders, the parties had limited their right to appeal to the February 20, 2019, October 14, 2020, and August 24, 2021 orders. Thus, pursuant to the parties' agreement and the consent orders, we deem waived any arguments not preserved in those consent orders. We note also that "[a]n issue that is not briefed is deemed waived upon appeal." N.J. Dep't of Env't Prot. v. Alloway Twp., 438 N.J. Super. 501, 505 n.2 (App. Div. 2015). Accordingly, we deem waived and do not address arguments regarding orders the parties cited in the notices of appeal but did not brief. See Green Knight Cap., LLC v. Calderon, 469 N.J. Super. 390, 396 (App. Div. 2021) (declining to reach an issue plaintiff had failed to raise or brief on appeal).

Defendants focus their appeal on the October 14, 2020 order denying their motion regarding plaintiff's real estate appraisal expert. Plaintiff focuses its

cross-appeal on the February 20, 2019 order setting the date of valuation and the August 24, 2021 order denying its motion regarding defendants' FF&E expert. We now turn to their arguments regarding those orders.

II.

Both the United States and New Jersey Constitutions forbid the government from taking private property for public use without payment of just compensation. U.S. Const. amend. V; N.J. Const. art. I, § 20; see Klumpp v. Borough of Avalon, 202 N.J. 390, 405 (2010) (noting federal and state guarantees are coextensive). Just compensation for a taking is the "fair market value" as of the relevant date, "determined by what a willing buyer and a willing seller would agree to, neither being under any compulsion to act." Borough of Saddle River v. 66 East Allendale, LLC, 216 N.J. 115, 136 (2013) (quoting State v. Silver, 92 N.J. 507, 513 (1983)). The aim is to ensure the property owner is "put in the same position monetarily" as the owner "would have occupied if [the] property had not been taken." United States v. Reynolds, 397 U.S. 14, 16 (1970); see also Brown v. Legal Found. of Wash., 538 U.S. 216, 236 (2003) (same). That said, "[t]here is no precise and inflexible rule for the assessment of just compensation," and "[c]ourts have been careful not to reduce the concept to a formula." Jersey City Redevelopment Agency v. Kugler, 58 N.J. 374, 383-

84 (1971); see also State by Comm'r of Transp. v. Caoili, 135 N.J. 252, 271 (1994) (same).

The determination of just compensation often, if not always, involves the presentation of expert testimony. N.J. Sports & Exposition Auth. v. Cariddi, 84 N.J. 102, 104 (1980) (noting, for example, "[p]roof of comparable sales" for use in determining just compensation "is generally garnered from the testimony of an expert witness"). To be admissible, an expert's testimony must satisfy the following criteria:

> (1) the intended testimony must concern a subject matter that is beyond the ken of the average juror; (2) the field testified to must be at a state of the art such that an expert's testimony could be sufficiently reliable; and (3) the witness must have sufficient expertise to offer the intended testimony.
>
> [In re Accutane Litig., 234 N.J. 340, 349 (2018) (quoting State v. Kelly, 97 N.J. 178, 223 (1984)).]

As with any evidence, expert testimony must be relevant to be admissible. State v. Williams, 240 N.J. 225, 235 (2019).

The trial court's role is that of a "gatekeeper," making legal determinations about "what is reliable enough to be admitted and what is to be excluded," rather than credibility determinations, which "are the province of the [factfinder]." In re Accutane Litig., 234 N.J. at 388. Thus, "[t]he admission or exclusion of

expert testimony is committed to the sound discretion of the trial court."  State v. Cotto, 471 N.J. Super. 489, 531 (App. Div. 2022) (quoting Townsend v. Pierre, 221 N.J. 36, 52 (2015)).  "Absent a clear abuse of discretion, an appellate court will not interfere with the exercise of that discretion."  Nicholas v. Hackensack Univ. Med. Ctr., 456 N.J. Super. 110, 117 (App. Div. 2018) (quoting Carey v. Lovett, 132 N.J. 44, 64 (1993)).

N.J.R.E. 703 provides that "[t]he facts or data . . . upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the proceeding. . . ."  The net-opinion rule "forbids the admission into evidence of an expert's conclusions that are not supported by factual evidence or other data."  State v. Burney, 255 N.J. 1, 23 (2023) (quoting Townsend, 221 N.J. at 53-54).  Thus, under the net-opinion rule, "[c]ourts 'may not rely on expert testimony that lacks an appropriate factual foundation and fails to establish the existence of any standard about which the expert testified.'"  In re Civ. Commitment of A.Y., 458 N.J. Super. 147, 169 (App. Div. 2019) (quoting Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 410 (2014)) (internal quotation marks omitted).

Depending on the property and the surrounding circumstances, experts generally choose from among three traditional appraisal methods to ascertain

11

fair market value:  sales comparison, income capitalization, or cost.  Brown v. Borough of Glen Rock, 19 N.J. Tax 366, 376 (App. Div. 2001).  "Our courts have consistently refrained from mandating that a specific methodology be used in appraising condemned property."  Caoili, 135 N.J. at 270.  "[A]n appellate court should determine only whether the method used at trial was reasonable."  Id. at 270-71.

To value Lot 19, both McHale and Brody used the income capitalization approach, often a preferred method for valuing an income-generating property.  Helmsley v. Borough of Fort Lee, 78 N.J. 200, 213-14 (1978); see also Borough of Ft. Lee v. Hudson Terrace Apartments, 175 N.J. Super. 221, 227 (App. Div. 1980).  Essentially, the method requires calculating the net operating income for the property – which is the product of the market rent and available square footage, less vacancy and collection losses and operating expenses – and then dividing by the appropriate capitalization rate, a figure which "reflects the relationship between a single year's net operating income expectancy and the total property price or value."  Glenpointe Assocs. v. Twp. of Teaneck, 31 N.J. Tax 596, 605-06, 610 (Tax 2020) (quoting Appraisal Inst., The Appraisal of Real Estate 493 (14th ed. 2013)).  With regard to rent, although "the fair rental value, rather than the actual rent payable under an existing lease, must control," the

12

actual rent remains an appropriate element for consideration in determining what the fair rental value is. McCrory Stores Corp. v. Asbury Park, 89 N.J. Super. 234, 243 (App. Div. 1965) (quoting City of New Brunswick v. State Div. of Tax Appeals, 39 N.J. 537, 544 (1963)); see also Humble Oil & Refin. Co. v. Borough of Englewood Cliffs, 135 N.J. Super. 26, 31 (App. Div. 1975) (same).

While the case was still before the trial court, defendants moved to limit McHale's testimony, barring him from testifying about the ACME contract rent. The court denied that motion, holding defendants could cross-examine McHale regarding whether his consideration of the ACME contract rent was appropriate under the circumstances of this case. On appeal, defendants contend the court erred in allowing evidence of the ACME contract lease to be presented to the trier of fact because that evidence had no relevance to the fee simple value at issue in this case.

We perceive no abuse of discretion in the trial court's denial of defendants' motion. Granting the motion would have had the effect of requiring the arbitrator to ignore a critical fact regarding the property – the rent for the anchor tenant set forth in a long-term lease that bound the owner of the property for years ahead – a fact no buyer in 1994 would have disregarded in determining what it would be willing to pay for the property. And just compensation is

13

"determined by what a willing buyer and a willing seller would agree to," as of the relevant date. 66 East Allendale, LLC, 216 N.J. at 136 (quoting Silver, 92 N.J. at 513).

We acknowledge defendants' assertions that the ACME lease was terminated in 1999 in an order for partial summary judgment in Berardi v. ACME Markets, Inc., No. BUR-C-135-96 (Ch. Div. Mar. 15, 1999), and the ACME building was vacant on the day of taking in 2018. But defendants can't have it both ways. They can't say the property should be valued not as of the day of taking in 2018 but as of January 27, 1994, the day the Township adopted the resolution designating the property as an "area in need of redevelopment," and then say conditions that existed after January 27, 1994, govern the calculation of just compensation.

Defendants contend "the shopping center was economically vibrant and successful as of the date of valuation." That may be true. But, on January 27, 1994, the date defendants asked the court to set as the date of valuation, defendants were bound by a long-term lease setting the rent of its anchor tenant at $.77 per square foot, a fact relevant to the determination of what a willing buyer would have paid for the property in 1994. The trial court acted within its discretion when it denied defendants' motion to bar McHale from testifying

14

about that relevant evidence and otherwise limiting his testimony. Accordingly, we affirm the October 14, 2020 order denying defendants' motion.

We turn now to the Township's cross-appeal of the February 20, 2019 order setting January 27, 1994, as the date of valuation. The Eminent Domain Act, N.J.S.A. 20:3-1 to -50, provides that just compensation for the taking of property:

> shall be determined as of the date of the earliest of the following events: (a) the date possession of the property being condemned is taken by the condemnor in whole or in part; (b) the date of the commencement of the action; (c) the date on which action is taken by the condemnor which substantially affects the use and enjoyment of the property by the condemnee; or (d) the date of the declaration of blight by the governing body upon a report by a planning board . . . .

> [N.J.S.A. 20:3-30 (emphasis added).]

Pursuant to the Act, "[t]he value of any land or other property being acquired in connection with development or redevelopment of a blighted area shall be no less than the value as of the date of the declaration of blight by the governing body upon a report by a planning board." N.J.S.A. 20:3-38. The Legislature enacted that statute based on its "perception that the ordinary and natural consequence of a declaration of blight is to trigger a decline in value." Hous. Auth. of Newark v. Ricciardi, 176 N.J. Super. 13, 18 (App. Div. 1980);

see also Kugler, 58 N.J. at 381-82 n.1 (discussing the underlying Assembly bills that introduced the statutory language subsequently enacted by the Legislature).

The parties do not dispute that the earliest event was "the date of the declaration of blight by the governing body upon a report by a planning board," N.J.S.A. 20:3-30(d), and that that day was January 27, 1994.

Before the case was transferred to binding arbitration, defendants moved in the trial court to set the date of valuation as January 27, 1994, pursuant to N.J.S.A. 20:3-30(d). The Township opposed the motion, arguing May 4, 2018, the day the Township filed the complaint, should be set as the date of valuation. On February 20, 2019, after hearing argument, the trial court entered an order setting the date of valuation as January 27, 1994, which the court described as "the date upon which the Township of Pemberton adopted Resolution 43-1994, designating the subject property as in a[n] 'area in need of redevelopment.'"

On appeal, the Township argues "principles of equity" require a reversal of the order. Urging this court not to engage in a "rote application of the statute," the Township contends "facts unique to this case require that the valuation date be fixed at the date the Township actually took possession of the [p]roperty." The Township cites as a unique fact the twenty-four-year gap between the "area

in need of redevelopment" designation and the date of taking and claims the order effectively awards defendants a windfall not intended by the Legislature.

We review de novo as a matter of law a trial court's statutory interpretation. State v. Gomes, 253 N.J. 6, 16 (2023). We follow, as we must, our long-standing principles of statutory construction. "[S]tatutory construction begins with an examination of the plain language of the statute, 'ascrib[ing] to the . . . words their ordinary meaning and significance.'" State v. Higginbotham, 257 N.J. 260, 280 (2024) (omission and second alteration in original) (quoting DiProspero v. Penn, 183 N.J. 477, 492 (2005)). "We 'may neither rewrite a plainly-written enactment of the Legislature nor presume that the Legislature intended something other than that expressed by way of the plain language.'" Ibid. (quoting O'Connell v. State, 171 N.J. 484, 488 (2002)). In accordance with those principles and the clear language of N.J.S.A. 20:3-30 and N.J.S.A. 20:3-38, we affirm the February 20, 2019 order and the court's designation of January 27, 1994, as the date of valuation.

We perceive no inequity or action contrary to legislative intent in affirming the order. The Township contends the passage of time in this case constitutes a unique circumstance that justifies a deviation from the directives set forth in N.J.S.A. 20:3-30 regarding the determination of the date of valuation

and the requirement of N.J.S.A. 20:3-38 setting the minimum value of property taken "in connection with . . . redevelopment of a blighted area" as "the value as of the date of the declaration of blight by the governing body . . . ." But the issue of the passage of time isn't unique. To the contrary, concerns about the passage of time between a blight declaration and the eventual taking of property – along with the risk of diminished property value during that interval – is what motivated the Legislature to enact the plain statutory language at issue. See Kugler, 58 N.J. at 381-82 n.1; Ricciardi, 176 N.J. Super. at 18.

This case does not involve a post-complaint increase in property value or fire-insurance proceeds, like the cases on which the Township relies. See, respectively, Twp. of Piscataway v. S. Washington Ave., LLC, 400 N.J. Super. 358 (App. Div. 2008); Hous. Auth. of Camden v. United Ajax Corp., 129 N.J. Super. 119 (App. Div. 1974). This case involves the exact circumstances contemplated by the Legislature when it enacted N.J.S.A. 20:3-30 and N.J.S.A. 20:3-38: the "declaration of blight by the governing body upon a report by a planning board" and the subsequent taking of the property. As property owners, defendants were entitled to the enjoyment of their property, including collecting rents, until the property was actually taken. And, once the property was taken, they were entitled to its undiminished value, which, pursuant to N.J.S.A. 20:3-

30(d), required valuing the property as of the blight declaration in 1994. That is the position they would have occupied absent the Township's actions, and, consequently, that is the basis of the compensation due here. Reynolds, 397 U.S. at 16. Under these circumstances and the applicable plain statutory language, the trial court correctly fixed January 27, 1994, as the date of valuation.

Finally, we address the Township's cross-appeal of the August 24, 2021 order denying its motion to exclude as a net opinion Land's report and testimony regarding the FF&E on Lot 19. We note at the outset that a property owner is due compensation for equipment within a condemned building to the extent it constitutes a "functional unit" of the building. City of Long Branch v. Liu, 203 N.J. 464, 489 (2010); see also State by State Highway Comm'r v. Gallant, 42 N.J. 583, 590 (1964) (finding compensation for a taking should reflect the property's value enhanced by the "industrial machinery housed therein"). The Township does not contend otherwise.

Before the case was transferred to binding arbitration, the Township moved to bar Land's report and testimony as a net opinion. After hearing argument, the court placed a decision on the record on August 18, 2021, and entered an order on August 24, 2021, denying the motion. The court held it

could not find Land had failed to give "the why and wherefore for his opinion" and found the Township's arguments regarding his report and testimony involved questions as to Land's credibility, which could be addressed on cross-examination.

We perceive no abuse of discretion in that determination. On appeal, the Township faults Land for including in his appraisal items the Township contends did not separately add value to the property or were not present on the property in 1994. But that argument does not establish Land's opinion was a net opinion.

During his deposition, Land testified he had inspected the property in August 2018. According to Land, Rocco and his son accompanied him on the inspection, told him about the history of the property, and confirmed which items had been present on the property in January of 1994. Land testified he made an inventory of the FF&E items he considered sufficiently connected to the property and had estimated their value according to what a contractor would charge to replace them. To render that estimate, he consulted two manuals used by the construction industry and his firm's library of catalogs and other materials from suppliers of the items at issue and factored in depreciation. With that testimony, Land established the why and wherefore of his opinions. Pomerantz

A-3684-21

Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 372 (2011) (quoting Polzo v. Cnty. of Essex, 196 N.J. 569, 583 (2008)).

The Township was free to challenge Land's inclusion of the disputed items on cross-examination and in its argument to the arbitrator. And its challenge to his testimony ultimately proved largely successful, with the arbitrator awarding $163,035 for FF&E, not the $616,635 in depreciated value found by Land. On that record, the court did not abuse its discretion by denying the Township's net-opinion motion. Accordingly, we affirm the August 24, 2021 order.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-3684-21